105 So.2d 594 (1958)
Marie ADLER, Appellant,
v.
Mr. and Mrs. H.S. COPELAND, Jr., Appellees.
No. 57-459.
District Court of Appeal of Florida. Third District.
October 14, 1958.
*595 Franklyn Levenson and Richard E. Thomas, Miami, for appellant.
Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for appellees.
HORTON, Judge.
The appellant was the plaintiff and the appellees the defendants in the court below. This is an action for wrongful death in which a judgment of involuntary non-suit was taken by the plaintiff after the trial judge indicated his intention to direct a verdict. The plaintiff has prosecuted this appeal in accordance with § 59.05, Fla. Stat., F.S.A. The scope of this review is similar to that of a review of a judgment entered after a directed verdict.
The plaintiff, Marie Adler, was unable to support her two children and had a welfare agency place them in a foster home in the Copeland neighborhood. The two children, Connie, aged 5, and David, aged 4, became acquainted with the Copeland children and frequently played with them. On the day of this tragedy, the two Adler children and two of the Copeland children entered the defendants' back yard. The yard was fenced so that access was had by one of two gates. On the day in question, only one of the gates was locked. Located within the Copeland back yard was a swimming pool and various playground equipment. Mrs. Copeland testified that she was aware of the presence of the children in the back yard and had given them a toy to play with at their request. After the children had been in the yard about half an hour, Mrs. Copeland announced that she was going to visit a neighbor and instructed the children not to go near the pool. Upon her return, approximately thirty minutes later, Mrs. Copeland found the body of Connie Adler floating in the pool. No evidence was offered to explain how the fatal drowning occurred.
At the conclusion of the plaintiff's case, and upon motion of the defendants for directed verdict, the trial judge inquired if counsel for the plaintiff was relying upon the doctrine of attractive nuisance. At that time, the plaintiff's counsel specifically denied that he was proceeding under that theory. The trial judge then announced his intention to direct a verdict based upon his conclusion that the deceased was merely a trespasser on the defendants' property.
Although the plaintiff had renounced her reliance on the attractive nuisance doctrine in the court below, on appeal she now contends that the swimming pool did constitute an attractive nuisance. The doctrine of attractive nuisance, as developed by decisions in Florida, is succinctly stated in Howard v. Atlantic Coast Line Railroad Company, 5 Cir., 231 F.2d 592, 593:
"* * * [U]nder Florida law the general rule is that the owner of an artificial body of water is not guilty of actionable negligence for drownings therein unless it is so constructed as to constitute a trap or unless there is some unusual element of danger lurking about it not existent in ponds generally. Lomas v. West Palm Beach Water Co., Fla., 57 So.2d 881; Newby v. West Palm Beach Water Co., Fla., 47 So.2d 527; Allen v. William P. McDonald Corp., Fla., 42 So.2d 706."
In the instant case, there was nothing shown that constituted a trap or latent danger. Swimming pools are fairly common in South Florida and they normally present no hidden danger as far as their construction is concerned. As was further said in Howard v. Atlantic Coast Line Railroad Company, supra:
"It can hardly be argued that steep banks are not found in natural bodies *596 of water, nor that even greater dangers, such as holes wherein a wading child might fall, do not threaten young children who swim in them. Nor can we sustain the view that there is anything hidden about a straight sided pool."
This is not analogous to the facts which were presented to us in Ansin v. Thurston, Fla.App., 1957, 98 So.2d 87 and Larnel Builders, Inc., v. Martin, Fla.App., 105 So.2d 580, wherein we held the nature of certain banks along artificial bodies of water constituted a trap to an immature child.
Lacking the application of the attractive nuisance doctrine, which is an exception to the rule of nonliability to infant trespassers, the plaintiff must rest her case on the relationship created between the landowner and the deceased child with the consequent duties that flow therefrom. The deceased had not attained the status of invitee as her presence on the premises was for purely social reasons. Goldberg v. Straus, Fla. 1950, 45 So.2d 883; McNulty v. Hurley, Fla. 1957, 97 So.2d 185. By no stretch of the imagination could one find a benefit to the landowner by the presence of the infant child. However, we cannot agree with the trial judge that she was a trespasser on the defendants' property. Apparently she had come onto the property on the implied invitation of the Copeland children. In fact, Mrs. Copeland testified that she had given the children a toy to play with. It is therefore reasonable under the circumstances to conclude that the deceased child occupied the status of a licensee on the property.
The duty of a landowner to a licensee has been clearly established by the rulings of the Florida Supreme Court. City of Boca Raton v. Mattef, Fla. 1956, 91 So.2d 644; McNulty v. Hurley, supra. The landowner has the duty to refrain from willful and wanton acts of negligence and to give warning of any defects or dangerous conditions which are not subject to ordinary observation. The application of this rule is not difficult when the licensee is a mature adult with an understanding and awareness of danger. However, in applying the standards of duty, consideration must be given to the immaturity of the deceased, a five-year-old child. Cf. Burdine's, Inc., v. McConnell, 146 Fla. 512, 1 So.2d 462; Jackson v. Pike, Fla. 1956, 87 So.2d 410. Actions on the part of a landowner which would not be considered a breach of duty toward an adult licensee may be considered willful and wanton acts of negligence when applied to an infant. The degree of care should be commensurate with the attendant facts and circumstances, and in this instance, one of those facts was the tender years of the deceased child. It is a jury question whether the duty has been violated.
The appellees, inter alia, contend that the evidence at the trial demonstrated negligence as a matter of law on the part of the custodian of the deceased child as the proximate cause of death and that such negligence should be imputed to the plaintiff mother and thereby bar her recovery. This contention as an abstract proposition may have merit but under the circumstances disclosed by the testimony and evidence at the trial, the question of proximate cause was not so clear and convincing as to permit a conclusion that as a matter of law the deceased child's death was a direct and proximate result of the custodian's alleged negligence. The trial judge grounded his conclusion upon the lack of negligence on the part of the appellees without reference to or consideration of the question of contributory negligence on the part of the custodian. There was apparently no reason for him to consider that phase of the case having concluded as he did that there was no negligence on the part of the appellees. Whether or not the conduct of the custodian constituted negligence and whether such negligence, if it existed, was the proximate cause of the child's death is not for us to decide. That is an affirmative defense raised by the appellees which, like the negligence charged by the appellant, must be proven and should be submitted to a jury *597 by the trial judge if he concludes that the evidence and proof justify such action on his part.
Nothing in the foregoing should be construed as an indication of our conclusion on the merits of the cause. We simply hold that the evidence presented by the plaintiff was sufficient to require its submission to a jury under appropriate instructions.
Reversed and remanded for proceedings not inconsistent herewith.
CARROLL, CHAS., C.J., and PEARSON, J., concur.