132 So.2d 219 (1961)
Ted M. BANKS, Appellant,
v.
James MASON and Patricia Mason, his wife, Appellees.
No. 1946.
District Court of Appeal of Florida. Second District.
July 21, 1961.
Rehearing Denied August 15, 1961.
M. James Shaw, of Anderson, Gundlach & Hull, Fort Lauderdale, for appellant.
Stephen C. McAliley, Fort Lauderdale, for appellees.
SHANNON, Chief Judge.
The appellant, plaintiff below, filed his amended complaint against the appellees, defendants below, in this negligence action. The plaintiff's amended complaint was dismissed, and, hence, this appeal.
The amended complaint was based on the fact that plaintiff's son, aged three, was drowned in a private swimming pool maintained upon the property of the defendants. The plaintiff charges that the swimming pool was erected and maintained upon the premises of the defendants and that no fence, guard rail or other safety device was maintained thereon; that children of tender age were in the habit of being upon and playing upon said premises and around and in the vicinity of said swimming pool; *220 that a fence, guard rail or other safety device would have prevented said children coming upon and being upon said premises and near said pool; that on the 19th day of May, 1959, young Banks, deceased, having been attracted to and induced to come upon and be upon and play upon said premises and in and around said swimming pool, and being unable to perceive or appreciate the danger confronting him, and without fault on his part, jumped, stumbled or slipped, or in some manner entered said swimming pool, and, as a result, died of drowning. The second count of the complaint charges that, although it was their duty to do so, the defendants did negligently fail to properly fence, or otherwise protect, said pool, or in any other way, guard or protect the numerous children in the neighborhood from the dangers attendant to said pool; that defendants had actual knowledge and repeated warnings by neighbors and parents of the deceased that children were playing in the neighborhood and in the vicinity of the pool; and that the defendants knew that this condition existed and that children were being exposed to unreasonable risks beyond the comprehension of children of tender years, all of which constituted a breach of duty; that the construction of the swimming pool, without properly protecting same, involved an unreasonable risk of death or serious bodily harm to children in said neighborhood. The lower court dismissed the complaint.
Plaintiff notes two points in this appeal, namely: 1) Does the fact that a private swimming pool is similar to hazards existing in nature preclude the application of Section 339 of Restatement of the Law of Torts? 2) May the trial court, as a matter of law, determine that the maintenance and location of a private swimming pool in a heavily populated residential area may not impose upon the owner the duty of ordinary care to children of tender age? By these two points the plaintiff seeks reversal under the attractive nuisance doctrine or, alternatively, under the theory that there was here involved a dangerous instrumentality. Notwithstanding the Restatement of the Law of Torts, Florida, since the Restatement was published, has settled this question.
In a long line of cases, the courts of this country have developed the attractive nuisance doctrine. See e.g.: "The Turntable Case," Sioux City & Pacific Railroad Co. v. Stout, 1874, 17 Wall. 657, 21 L.Ed. 745. The rules enunciated in the decisions wherein this doctrine has found application have been summarized in Section 339 of The Restatement of Torts as follows:
"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."
This doctrine is well established in the jurisprudence of this state. Stark v. Holtzclaw, 1925, 90 Fla. 207, 105 So. 330, 41 A.L.R. 1323; May v. Simmons, 1932, 104 Fla. 707, 140 So. 780; Peters v. City of Tampa, 1934, 115 Fla. 666, 155 So. 854; and *221 Johnson v. Wood, 1945, 155 Fla. 753, 21 So.2d 353. See also Carter v. Livesay Window Co., Fla., 1954, 73 So.2d 411; and Cockerham v. R.E. Vaughan, Inc., Fla. 1955, 82 So.2d 890, 891, where the question of whether there existed an "inherently dangerous condition" was controlling. However, in the case of Allen v. William P. McDonald Corporation, Fla. 1949, 42 So.2d 706, a case involving a two and one-half year old child who drowned in a pond after having been attracted thereto by banks of white sand, our Supreme Court said:
"The rule supported by the decided weight of authority is that the owner of artificial lakes, fish ponds, mill ponds, gin ponds and other pools, streams and bodies of water are not guilty of actionable negligence on account of drownings therein unless they are constructed so as to constitute a trap or raft or unless there is some unusual element of danger lurking about them not existent in ponds generally. Citing cases). * * *"
"We think the allegations of the declaration bring this case within the exception to the general rule. A spoil bank of white sand adjacent to an artificial lake or pond is an unusual element of danger and will render it more attractive than the ordinary pond. There is nothing more enticing to a child or a gang of children than a sand pile. * * *"
The Allen case, supra, is one of three cases relied upon by the trial judge in the instant case as authority for the final judgment from which this appeal is taken. The other two cases cited by the court below are Lomas v. West Palm Beach Water Co., Fla. 1952, 57 So.2d 881, and Adler v. Copeland, Fla.App. 1958, 105 So.2d 594. We think that these cases are direct authority for the answer given below and the one that should be, and is, given here.
The Lomas case was an appeal from summary judgments in favor of the defendant in two suits arising from the death by drowning of a child in an artificial pool. There, the Supreme Court said:
"The complaint attempted to make a case within the rule announced by this Court in Allen v. William P. McDonald Corporation, Fla., 42 So.2d 706, wherein we held with the decided weight of authority that owners of artificial lakes, fish ponds, mill ponds, gin ponds and other pools, streams and bodies of water are not guilty of negligence for drownings therein unless they are constructed so as to constitute a trap or raft or unless there is some unusual element of danger lurking about them not existent in ponds generally. Appellant failed to make a case within this rule." [57 So.2d 882.]
In Adler v. Copeland, supra, action was brought for the death of a five year old child by drowning in a swimming pool. After the trial judge indicated his intention to direct a verdict, the plaintiff took a judgment of involuntary nonsuit and appealed. The case was reversed on the question of the relationship of the child to the landowner, the court saying:
"Lacking the application of the attractive nuisance doctrine, which is an exception to the rule of nonliability to infant trespassers, the plaintiff must rest her case on the relationship created between the landowner and the deceased child with the consequent duties that flow therefrom. The deceased had not attained the status of invitee as her presence on the premises was for purely social reasons. Goldberg v. Straus, Fla. 1950, 45 So.2d 883; McNulty v. Hurley, Fla. 1957, 97 So.2d 185. By no stretch of the imagination could one find a benefit to the landowner by the presence of the infant child. However, we cannot agree with the trial judge that she was a trespasser on the defendants' property. Apparently, *222 she had come onto the property on the implied invitation of the Copeland children. In fact Mrs. Copeland testified that she had given the children a toy to play with. It is therefore reasonable under the circumstances to conclude that the deceased child occupied the status of a licensee on the property." [105 So.2d 596.]
In the Adler case, supra, the court cites Howard v. Atlantic Coast Line Railroad Company, 5 Cir., 231 F.2d 592, 593, wherein we find the following language:
"* * * (U)nder Florida law the general rule is that the owner of an artificial body of water is not guilty of actionable negligence for drownings therein unless it is so constructed as to constitute a trap or unless there is some unusual element of danger lurking about it not existent in ponds generally. Lomas v. West Palm Beach Water Co., Fla., 57 So.2d 881; Newby v. West Palm Beach Water Co., Fla., 47 So.2d 527; Allen v. William P. McDonald Corp., Fla., 42 So.2d 706.
* * * * * *
"It can hardly be argued that steep banks are not found in natural bodies of water, nor that even greater dangers, such as holes wherein a wading child might fall, do not threaten young children who swim in them. Nor can we sustain the view that there is anything hidden about a straight sided pool."
In the Adler case, as in the instant case, there was no showing and no allegation that the swimming pool constituted a trap or latent danger. As is stated in that case:
"* * * In the instant case, there was nothing shown that constituted a trap or latent danger. Swimming pools are fairly common in South Florida and they normally present no hidden danger as far as their construction is concerned."
See also Newby v. West Palm Beach Water Co., Fla. 1950, 47 So.2d 527. For examples of the exceptions to the rule announced in the Allen case, supra, see Ansin v. Thurston, Fla.App. 1957, 98 So.2d 87, writ of certiorari denied Fla., 101 So.2d 808 (floating dock and raft in water-filled pit); and Larnel Builders, Inc. v. Martin, Fla.App. 1958, 105 So.2d 580, writ of certiorari discharged Fla., 110 So.2d 649 (high spoil mound sloping into a canal).
Upon consideration of the case at bar, we find it to be controlled by the general rule set out in Allen v. William P. McDonald Corporation, supra. The judgment appealed from is, therefore, affirmed.
Affirmed.
ALLEN and KANNER, JJ., concur.