A97A1878. HEMPHILL v. JOHNSON.
(497 SE2d 16)

JOHNSON, Judge.

Lesa Hemphill, the mother and administrator of the estate of L'Qwuisha Whiteside, appeals the superior court's grant of summary judgment to Judy Johnson in this wrongful death drowning case. Although the superior court properly granted the motion on Hemphill's premises liability claim, issues of material fact remain on Hemphill's negligent supervision claim. Therefore, we reverse in part.

"On appeal from a trial court's grant of summary judgment, this Court conducts a de novo review of the evidence. [Cit.]" *Gentile v. Bower*, 222 Ga. App. 736 (477 SE2d 130) (1996). In order to prevail at summary judgment under OCGA § 9-11-56, "the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. [Cit.]" *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in the light most favorable to non-movant Hemphill, the record reveals the following pertinent facts: During the afternoon of May 23, 1995, Lesa Hemphill's 11-year-old daughter, L'Qwuisha Whiteside, drowned in Judy Johnson's pool. L'Qwuisha and her seven-year-old sister Teda were invited over to swim by Chase Brumagin, a seven-year-old boy who was in Johnson's care during the day. Another friend of Chase's, seven-year-old Gary Wyms, also came to play in the pool. Teda and L'Qwuisha had never been in Johnson's pool before. Before Johnson allowed them to go swimming, she sent them home to get permission to swim, a swimsuit, and a towel. Johnson said it is her policy never to allow children in the pool without parental permission and unless she is there to supervise. Both Hemphill and Teda state in their depositions that L'Qwuisha

called Hemphill at work and got permission to swim. Although Hemphill never spoke to Johnson about the condition of the pool or Johnson's swimming abilities, Hemphill did believe, based on her children's representations, that Johnson could swim.

When the children returned to the pool with their towels and swimsuits, Johnson assumed they had permission to swim. Johnson inquired of the children's swimming abilities. L'Qwuisha told Johnson that she could swim, but that Teda could not. Johnson restricted Teda to the shallow end of the pool, with Gary and Chase. Johnson said L'Qwuisha demonstrated her swimming ability by swimming across the shallow end of the pool. Therefore, L'Qwuisha was not restricted to the shallow end. L'Qwuisha had taken swimming lessons when she was six years old and could swim above and under the water.

Johnson admitted that although she considered herself a good swimmer, she had no underwater swimming ability when she undertook to supervise the children. Johnson also did not have any lifesaving equipment, like a shepherd's hook, which would enable her to pull a child from beneath the eight feet of water at the deep end of her pool.

After she determined the children's swimming abilities, Johnson walked to the edge of the shallow end of the pool to help the younger children inflate a float. According to Johnson, L'Qwuisha was the only child in the water at the time. Johnson said she watched the pool area continuously from the time the children arrived and did not go inside the house. Within moments of L'Qwuisha's swimming across the pool, Johnson heard Gary and Chase say that L'Qwuisha was drowning. Teda told Johnson that L'Qwuisha was just kidding, that she could hold her breath underwater. Johnson walked around to the deep end of the pool and saw that L'Qwuisha was not kidding, that she was sinking under the water. Johnson, realizing she could not pull the child from the water, ran next door to call 911 and to get a neighbor to pull the child from the pool. The neighbor, however, was unable to pull L'Qwuisha from beneath the water.

L'Qwuisha's sister, Teda, recalls the incident somewhat differently. When Teda and L'Qwuisha arrived at Johnson's house, Johnson was sitting in a chair near the pool reading a magazine. Johnson asked Teda and L'Qwuisha if they could swim and restricted Teda to the shallow end. Gary was already playing in the pool and Chase was walking around it, playing. Teda recalled that Johnson went inside the house to turn on a radio at some point during the afternoon. L'Qwuisha did not get into the pool right away. Rather, she sat down on some steps near the deep end of the pool. Chase threw a float into the water and asked L'Qwuisha to get it for him. L'Qwuisha climbed into the deep end and swam out to the middle of the pool to retrieve

the float while Teda and Gary played in the shallow end. As L'Qwuisha was swimming toward the float, Teda went inside Johnson's home to use the bathroom. When Teda came outside, she passed Johnson, who was sitting in a chair, reading a magazine. When Teda returned to the side of the pool, she could not see Johnson because foliage obstructed her view. As Teda stood by the side of the pool, L'Qwuisha was going under the water. Gary told Teda that her sister was drowning and yelled for Johnson. Teda at first thought L'Qwuisha was kidding. However, when Teda saw L'Qwuisha's eyes blinking as she drifted further underwater, she realized something was seriously wrong. As this was happening, Johnson walked up behind Teda, looked down into the pool, and then took her shoes off. Johnson then started screaming and ran to the front yard, calling for help.

1. In nine of her twelve enumerations of error, Hemphill argues the trial court erred in granting summary judgment to Johnson on her claim of negligent supervision. We consider these enumerations together.

Johnson admits she undertook to supervise L'Qwuisha and the other children who came to her house to swim. "When a person undertakes to control and watch over a young child, even without compensation, he becomes responsible for injury to the child through his negligence, and his duty to use reasonable care to protect the child is not measured by what his duty would have been to a social guest or licensee. However, the measure of duty of a person undertaking control and supervision of a child to exercise reasonable care for the safety of the child is to be gauged by the standard of the average responsible parent; such person is not an insurer of the safety of the child and has no duty to foresee and guard against every possible hazard. The measure of precaution which must be taken by one having a child in his care, who stands in no relation to the child except that he has undertaken to care for it, is that care which a prudent person would exercise under like circumstances. As a general rule, a person who undertakes the control and supervision of a child, even without compensation, has the duty to use reasonable care to protect the child from injury. Such person is not an insurer of the safety of the child. He is required only to use reasonable care commensurate with the reasonably foreseeable risk of harm." (Citations and punctuation omitted.) *Laite v. Baxter*, 126 Ga. App. 743, 745-746 (2) (191 SE2d 531) (1972); *Wallace v. Boys Club of Albany*, 211 Ga. App. 534, 535 (1) (439 SE2d 746) (1993).

Evidence exists which would authorize a finding that Johnson failed to use reasonable care commensurate with the reasonably foreseeable risk of harm to L'Qwuisha under these circumstances. Although L'Qwuisha could swim, she was only 11 years old and unfa-

miliar with Johnson's pool. Further, Johnson had never supervised L'Qwuisha before and knew very little about her physical abilities. Johnson admits she could not swim underwater and had no life-saving equipment with which to pull a child from beneath the water of the deep end of her pool. Johnson also admitted she did not jump into the pool when L'Qwuisha began to drown because she knew she was not strong enough to pull L'Qwuisha from the water. Though Johnson knew or should have known that she could not rescue L'Qwuisha from beneath the water in the foreseeable event of the child's drowning, she let L'Qwuisha swim in the deep end of the pool. Given these circumstances, a jury could find that Johnson's decision to let L'Qwuisha swim in the deep end was both unreasonable and a proximate cause of L'Qwuisha's death. We cannot say, therefore, that Johnson's supervision of L'Qwuisha was not negligent as a matter of law.

2. With respect to Hemphill's remaining enumerations of error, we hold that the trial court properly granted summary judgment on Hemphill's premises liability claim. Unlike the negligent supervision claim, the premises liability claim is based upon Johnson's allegedly permitting a defect or hazardous condition to exist upon the premises, and not upon Johnson's conduct as a supervisor. L'Qwuisha, as Johnson's social guest, was a licensee. *Bowers v. Grizzle*, 214 Ga. App. 718, 720 (4) (448 SE2d 759) (1994) (physical precedent only); *Riley v. Brasunas*, 210 Ga. App. 865, 866 (1) (438 SE2d 113) (1993). Under Georgia law, Johnson, as a landowner, owed a duty to L'Qwuisha not to injure her wilfully or wantonly. OCGA § 51-3-2 (b); *Bowers*, supra at 720 (4); *Riley*, supra at 867 (1). The existence and condition of Johnson's pool was open and obvious. Further, a swimming pool is not per se a mantrap. *Oliver v. City of Atlanta*, 147 Ga. App. 790, 792 (3) (250 SE2d 519) (1978).

There is no evidence in this case that L'Qwuisha's drowning was proximately caused by any defect in the pool, including the absence of safety or rescue equipment. Contrary to Hemphill's contentions, Johnson's poor swimming abilities or the absence of safety or rescue equipment does not convert the pool into a mantrap because the risk of drowning remains obvious, even to a child of L'Qwuisha's age. *Bowers*, supra at 720 (4); *Riley*, supra at 867 (1). Rather, if swimming in the pool is rendered more dangerous by these circumstances "it would normally be the duty of a parent or other adult having primary supervisory control over the child to see to it that a child would not be going into a place of obvious danger." (Citation and punctuation omitted.) *Bowers*, supra at 720-721 (4).

*Judgment affirmed in part and reversed in part. Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

482

*Mullins & Whalen, Richard L. Mullins, Samuel H. Sullivan,* for appellant.

*Swift, Currie, McGhee & Hiers, Sybil C. Hadley, Julia B. Haffke,* for appellee.