[No. B195284. Second Dist., Div. One. Feb. 29, 2008.]

LESLIE PADILLA, Plaintiff and Appellant, v.
ISMAEL RUANO RODAS et al., Defendants and Respondents.

**COUNSEL**

Bermeo & Merluza and Ricardo Y. Merluza for Plaintiff and Appellant.

Early, Maslach & Vandueck, James Randall; Law Office of Priscilla Slocum and Priscilla Slocum for Defendants and Respondents.

OPINION

**MALLANO, Acting P. J.**—In this case of first impression, a two-year-old child drowned in the backyard pool of the homeowners when his parent left him unattended for about five minutes. The parent brought an action for wrongful death and a survival action for negligence against the homeowners, asserting two theories of liability: negligent supervision and premises liability based on an allegedly defective gate. The trial court granted the homeowners' summary judgment motion on the grounds that (1) they owed no duty, and breached no duty, of supervision, and (2) the parent could not establish that the absence of a self-latching closing mechanism on the gate at one of the entrances to the pool area was a cause of the accident because it was speculative as to whether the child entered the pool area through the gate or through one of the other points of access to the pool. We agree with the trial court and affirm the judgment.

## BACKGROUND

We view the evidence admitted in connection with the summary judgment motion in the light most favorable to plaintiff as the losing party. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517].)

Plaintiff Leslie Padilla's son, Eddie, was born in 2002, when Padilla was living with her sister, defendant Vilma Lopez and Lopez's partner, defendant Ismael Ruano Rodas (Defendants). Lopez would sometimes babysit for Eddie when Padilla was at work. Sometime in 2004, Defendants purchased a home in Granada Hills with a backyard pool. The pool was accessible through two sliding glass doors leading from the living room to the patio and pool area. According to Padilla, the pool was also accessible through a door "on the left side and there is another one on the right side of the house." "[A]n iron gate [led] to the swimming pool area from the driveway, between the side yard and backyard. This iron gate was always open and did not have a lock to properly close." According to Rodas, the gate was six feet high and was not locked. Padilla and Eddie did not live with Defendants at their Granada Hills home, but visited regularly.

Lopez invited Padilla and Eddie to their home on June 27, 2004. They stayed overnight to June 28, the day of the drowning. Before 6:00 p.m. on June 28, Eddie was inside the house with Lopez. Other family members had been swimming in the pool, but Eddie, who did not know how to swim, had not been in the pool that day. Padilla knew that Eddie did not know how to swim. After Lopez left home about 6:00 p.m. to go to work, the only adults at the residence were Padilla and Rodas. About 7:00 p.m., Padilla and Rodas

were in the front driveway, watching Eddie play with his cousins, Jason, age 9, and Danny, age 7. Rodas received a telephone call on his cordless telephone and walked to the side yard of the house by the iron gate to take the call. According to Rodas, the gate was "open" at that time. Eddie asked Padilla for a glass of water. Padilla admitted that she knew that when Rodas was in the side yard, he was not watching the children. Padilla asked Jason and Danny to keep an eye on Eddie so he would not go into the street. Padilla went into the house for about five minutes, leaving the front door of the house open. When Padilla returned outside, she did not see Eddie, and Jason and Danny did not know where he was. Rodas was still on the telephone, standing at, and watching, the gate entrance. Padilla asked him where Eddie was, and Rodas told her that he did not know. Both of them began to look for Eddie. Padilla went into the house and through the glass door to the patio and pool area, where she found Eddie facedown in the pool. Padilla pulled him out of the pool. Paramedics took Eddie to the hospital emergency room, where he died later that evening.

Padilla brought suit for wrongful death and a survival action for negligence. Defendants moved for summary judgment on three grounds: (1) they had no duty to supervise Eddie and breached no duty to supervise him; (2) even if the gate did not have a self-latching mechanism as required by City of Los Angeles Municipal Code section 91.6109, Padilla could not establish that the condition of the gate was a cause of the accident; and (3) the action was barred by a release signed by Padilla in connection with her acceptance of $5,000 from Defendants' homeowner's insurer.[1] After two continuances and three hearings, the trial court granted Defendants' motion for summary judgment. Padilla appealed from the judgment.

## DISCUSSION

### A. *Standard of Review*

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) The burden

---

[1] Plaintiff raised the issue of the defective gate in opposition to the summary judgment motion. The trial court continued the motion to allow the parties to address that issue, and the parties thereafter briefed the causation issue as an additional ground for summary judgment.

The trial court's June 30, 2006 minute order granting the summary judgment motion did not address the issue of the release, which Padilla contended was obtained by the deceit of Defendants' insurer. We also deem it unnecessary to address this ground for the motion, and do not set out any of the evidence proffered by the parties on this point.

of persuasion remains with the party moving for summary judgment. [Citation.] When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' [Citation.] We review the record and the determination of the trial court de novo. [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].)

### B. *Defendants Had No Duty to Supervise Eddie*

■ With respect to the theory of liability based on negligent supervision, Padilla contends that Defendants "assumed a joint parental duty to supervise" Eddie while he was on their premises. We disagree. The issue of whether Defendants owed a duty of care to supervise Eddie under the circumstances of this case is a question of law. "Generally, one owes a duty of ordinary care not to cause an unreasonable risk of harm to others. (Civ. Code, § 1714, subd. (a); *Rowland v. Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561].) The existence of a duty is not an immutable fact of nature, but rather an expression of policy considerations providing legal protection. (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 472 [63 Cal.Rptr.2d 291, 936 P.2d 70].) Thus, the existence and scope of a defendant's duty is a question for the court's resolution. [Citation.]" (*Shin v. Ahn* (2007) 42 Cal.4th 482, 488–489 [64 Cal.Rptr.3d 803, 165 P.3d 581].)

"Some of the considerations that courts have employed in various contexts to determine the existence and scope of duty are: 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]' (*Rowland* v. *Christian, supra*, 69 Cal.2d at p. 113.)" (*Parsons v. Crown Disposal Co., supra*, 15 Cal.4th at pp. 472–473.)

■ The criteria in *Rowland* militate against the imposition of a duty of supervision on Defendants. It is not reasonably foreseeable that Padilla would leave two-year-old Eddie outside unattended, or under the supervision of other young children, while she went inside the house. It was undisputed that

Eddie was being supervised by Padilla when Rodas went to the side of the house to take a telephone call. Assuming for the purpose of argument that Rodas had accepted the joint responsibility of supervising Eddie on the day of the accident, Rodas abandoned that undertaking when he left the front yard area to talk on the telephone, leaving Padilla watching Eddie. And Padilla *knew* that Rodas had abandoned any supervisory responsibility before she decided to go into the house because she saw him walk to the side yard of the house on the telephone, was aware Rodas was not watching the children when he was in the side yard, and asked her nephews to make sure that Eddie did not run into the street. And there is no indication that Rodas knew that Padilla had gone into the house and was no longer supervising Eddie. Under these circumstances, moral blame cannot attach to Rodas's conduct. If no moral blame can attach to Rodas's conduct, then certainly no moral blame can attach to Lopez, who Padilla knew was not home at the time of the accident.

■ Imposing a duty under the circumstances of this case also would unreasonably burden social and family relationships, requiring homeowners to provide babysitting services for their guests' young children when the children's parents also were on the premises. Imposition of such a duty on homeowners would make them insurers of their guests' children's safety even when the parents are also present on the premises, a burden that is beyond all reasonable expectations of both homeowners and their guests. "[L]andowners are not insurers of public safety and will have no duty to provide highly burdensome measures of protection absent a showing of a high degree of foreseeability of the particular type of harm . . . ." (*Rinehart v. Boys & Girls Club of Chula Vista* (2005) 133 Cal.App.4th 419, 431 [34 Cal.Rptr.3d 677] [court affirmed summary judgment in favor of defendant where child on playground of after-school program was struck in head by rock thrown from hillside above playground by boy not part of program].)

■ Although California courts have not considered the issue, courts in other states have determined that a homeowner has no duty to supervise a child in the vicinity of a residential swimming pool when the child's parent is also present and have affirmed summary judgments in favor of homeowners on facts similar to those here.

In *Englund v. Englund* (1993) 246 Ill.App.3d 468 [186 Ill.Dec. 57, 615 N.E.2d 861] (*Englund*), a three-year-old child drowned in a swimming pool during a party and the child's mother, also present at the party, sued the homeowners. The Appellate Court of Illinois affirmed a summary judgment in favor of the homeowners, noting that the pool presented an obvious drowning danger, the mother knew that her child was playing alone in an area hidden from her view and a short distance from the pool area, and the mother knew

that the homeowners were busy attending to their guests and not watching the children playing in the pool or yard. (*Englund, supra,* 615 N.E.2d at p. 867.) The court held that "it was not foreseeable that plaintiff would fail to supervise her daughter adequately, and it is more desirable to place the substantial burden of supervising plaintiff's daughter upon plaintiff rather than the homeowners. [W]e will not require the homeowners to anticipate negligence on plaintiff's part and guard against it." (*Ibid.*)

In *Horace ex rel. Horace v. Braggs* (Ala. 1998) 726 So.2d 635, the Supreme Court of Alabama found *Englund* to be directly on point. In *Horace,* five-year-old Ashley nearly drowned in a pool during a birthday party. Ashley's father accompanied her to the party. The court held that "[t]he plaintiffs presented no evidence indicating that the primary duty for supervising Ashley had shifted to [the homeowner] Braggs at the time of the accident. Mr. Horace [Ashley's father] expressly permitted Ashley to play in the swimming pool, and he knew that she was doing so. . . . [¶] Moreover, Mr. Horace knew that Braggs was busy attending to her guests and was not watching children in the pool. Indeed, he expressly ordered [Ashley's 12-year-old brother] to watch her. At no time, did Mr. Horace or [Ashley's brother] leave the premises. Under these facts, Braggs owed no duty to provide 'adult supervision' for Ashley Horace." (*Id.* at p. 639.)

In *Moses v. Bridgeman* (2003) 355 Ark. 460 [139 S.W.3d 503] (*Moses*), the Supreme Court of Arkansas affirmed a summary judgment in favor of the homeowners after a 12-year-old child drowned in their pool. The child and his family were invited to the premises to plan a family reunion. The child's mother was present and supervising him. The homeowner provided life jackets for the children who wanted to swim and insisted that they wear them. Later, the child was found at the bottom of the pool without his life jacket, having died from drowning.

The Arkansas Supreme Court ruled that " '[I]f a condition is open and obvious rather than latent or obscure, no greater duty is imposed upon a host of a child under parental supervision than would be owed to the parent. If the parent has either been warned, or if the condition is or should be obvious to the parent, the parent['s] failure properly to supervise its child is the proximate cause of a subsequent injury. The host is not negligent because he has performed his duty of having the premises as safe for his guest as for his family and himself.' " (*Moses, supra,* 139 S.W. at pp. 509–510.) After noting that a swimming pool is an open and obvious danger for children and adults, the court held that "we do not impose a greater duty upon the host, Mrs. Bridgeman, than would be imposed on the parent, Ms. Frye. . . . Mrs. Bridgeman took steps to make the premises safe by providing the children with life jackets. The fact that [the child] took his life jacket off

when his mother had the responsibility for supervising him, and that he drowned as a result, should not be construed as a breach of duty of care owed by Mrs. Bridgeman." (*Id.* at p. 510.)

In *Herron v. Hollis* (2001) 248 Ga.App. 194 [546 S.E.2d 17] (*Herron*), three-year-old Cassidy and her mother were living in the defendant's home, which had a backyard pool. The defendant generally participated in the parenting and supervising of the child. While the defendant was taking a nap, the mother allowed her child to play in the backyard in the vicinity of the uncovered pool while the mother went into the house. When the mother looked out of the window to check on the child, she saw the child's toy floating in the pool and ran outside to find the child in the pool. The mother pulled the child out of the pool, but the child died the next day. The Court of Appeals of Georgia affirmed summary judgment in favor of the homeowner on the negligent supervision claim, concluding that because the child was being supervised by her mother at the time of the incident, and the mother knew that the homeowner was taking a nap, "we must agree with the trial court that [the defendant] is not liable under a negligent supervision theory. ' "[I]t would normally be the duty of a parent or other adult having primary supervisory control over the child to see to it that a child would not be going into a place of obvious danger." ' [Citation.] At the time of the incident, Cassidy's mother had primary and exclusive supervisory control over Cassidy." (*Id.* at pp. 18–19, fn. omitted.)

The court in *Herron* also concluded that summary judgment was properly granted on the premises liability claim because the homeowner used reasonable care in leaving the child under the supervision of her mother and there was no evidence that the child's drowning was caused by any defect in the pool. (*Herron, supra,* 546 S.E.2d at p. 19.) The court explained: "Under the present circumstances, it is plain that it is not reasonably foreseeable that a mother would leave her three-year-old daughter unsupervised near an uncovered pool. [¶] . . . [The defendant] was not supervising the child at the time of the incident and was not otherwise negligent in a manner that contributed to the child's death. . . . [The defendant] cannot be held responsible for the death of the child under these facts. To hold otherwise would be to make him strictly liable for injuries to the child which resulted from a failure of the child's mother to properly supervise her." (*Id.* at pp. 19–20.)

The foregoing authorities support our determination that Defendants had no duty to supervise Eddie when Padilla went into the house for a glass of water. The following three cases, relied on by Padilla, are distinguishable and are of no aid to her.

The case of *Broadbent v. Broadbent* (1995) 184 Ariz. 74 [907 P.2d 43] is inapplicable because it was a suit by a child against a parent and involved the parental immunity doctrine.

In *Adler v. Copeland* (Fla.Dist.Ct.App. 1958) 105 So.2d 594 (*Adler*), the District Court of Appeal of Florida reversed a judgment of involuntary nonsuit entered after the trial court indicated an intention to direct a verdict in favor of the defendant. *Adler* involved the drowning death of a five-year-old child in a neighbor's backyard pool. The child gained access to the backyard pool area through an unlocked gate. The homeowner knew that her children as well as the five-year-old were playing in the backyard when she told the children that she was going to visit a neighbor and that the children were not to go near the pool. Leaving the children unattended for 30 minutes, the homeowner returned to find the body of the five-year-old floating in the pool. The district court of appeal held that a landowner has the duty to refrain from willful and wanton acts of negligence and to give warning of any defects or dangerous conditions that are not obvious, and it was a jury question as to whether that duty was violated, given the "tender years of the deceased child." (*Id.* at p. 596.) Here, the circumstances are entirely different than those in *Adler*. Rodas's conduct does not approach that of the homeowner in *Adler*, who abandoned the children in the vicinity of the pool with no adult supervision for 30 minutes. *Adler* is of no avail to Padilla.

Finally, *Hemphill v. Johnson* (1998) 230 Ga.App. 478 [497 S.E.2d 16] also provides no assistance to Padilla. In *Hemphill*, the defendant, Johnson, admitted that she had undertaken the responsibility to supervise the children who came to her house to swim in her pool and there was a triable issue as to whether she breached that duty in causing the drowning death of an 11-year-old child. Before Johnson permitted the child into her pool, she sent the child home to get parental permission, which she obtained. Johnson, *who admitted that she undertook to supervise the child*, allowed the child to swim in the deep end of the pool, even though Johnson could not swim underwater, had no lifesaving equipment, and was not strong enough to pull the child from the water. When the child began to drown, Johnson did not jump into the pool to rescue her. In reversing a summary judgment in favor of Johnson, the court stated, "Given these circumstances, a jury could find that Johnson's decision to let [the child] swim in the deep end was both unreasonable and a proximate cause of [her] death. We cannot say, therefore, that Johnson's supervision of [the child] was not negligent as a matter of law." (*Id.* at p. 19.)

In sum, based on our analysis of the *Rowland* criteria, as well as the weight of authority of other courts which have addressed this issue, we conclude that Defendants had no duty to supervise Eddie under the circumstances here. Neither Rodas nor Lopez engaged in conduct indicating that they had

undertaken the responsibility to supervise Eddie when Padilla went into the house for a glass of water, and the policy considerations previously noted militate against imposition of such a duty. Summary judgment was properly granted as to this claim of liability.

### C. Padilla Cannot Establish Causation Element for Premises Liability Theory

Defendants are entitled to summary judgment on the premises liability theory because, even if we assume that the gate was defective for lack of a self-latching mechanism, Padilla cannot establish the element of causation.

■ " 'Actionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the . . . legal cause of the resulting injury.' (*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770].)" (*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017, 1024–1025 [68 Cal.Rptr.3d 897].) To establish the element of actual causation, it must be shown that the defendant's act or omission was a substantial factor in bringing about the injury. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 778 [107 Cal.Rptr.2d 617, 23 P.3d 1143] (*Saelzler*).) Under the current version of the summary judgment statute, a moving defendant need not support his motion with affirmative evidence negating an essential element of the plaintiff's case; instead, the defendant may point to the absence of evidence to support the plaintiff's case. (*Id.* at p. 780.) Thus, if the defendant has shown, through the evidence adduced in the case, that the plaintiff cannot reasonably expect to establish a prima facie case of causation, and that a nonsuit in the defendant's favor would be inevitable, then "the trial court was well justified in awarding summary judgment to avoid a useless trial." (*Id.* at p. 768.)

Where there is evidence that the harm could have occurred even in the absence of the defendant's negligence, "proof of causation cannot be based on mere speculation, conjecture and inferences drawn from other inferences to reach a conclusion unsupported by any real evidence . . . ." (*Saelzler, supra,* 25 Cal.4th at p. 775.) "As Professors Prosser and Keeton observe, 'A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, *it becomes the duty of the court to direct a verdict for the defendant.*' (Prosser & Keeton, Torts (5th ed. 1984) § 41, p. 269, fns. omitted, italics added.)" (*Saelzler, supra,* 25 Cal.4th at pp. 775–776.)

With the evidence viewed most favorably to Padilla, she is unable to show that it was more probable than not that a self-latching gate would have prevented Eddie's drowning. The probabilities are evenly balanced as to

whether Eddie gained entrance to the pool through the side yard gate, the "door" on the other side of the house, or the sliding glass doors of the house. Accordingly, Padilla cannot establish that Defendants' failure to provide a self-latching gate was a substantial factor in causing Eddie's drowning. Under the foregoing principles set out in *Saelzler*, we must conclude that summary judgment was properly granted on the premises liability theory.[2]

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.

Vogel, J., and Rothschild, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 21, 2008, S162564.

---

[2] At oral argument, Padilla's counsel proffered a theory of premises liability based on the lack of a *separate fence and gate* around the pool. Because this theory was not raised in the briefs on appeal, we do not address it. "An appellant abandons an issue by failing to raise it in the opening brief." (*H.N. & Frances C. Berger Foundation v. City of Escondido* (2005) 127 Cal.App.4th 1, 15 [25 Cal.Rptr.3d 19].)