Filed 2/18/14  Yang v. Clawson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THANH YANG et al., | B248728 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. GC049109) |
| v. | |
| JOHN SPENCER CLAWSON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Jan A. Pluim, Judge.  Affirmed.

Law Office of Brian J. Breiter and Steve A. Hoffman for Plaintiffs and Appellants.

Demler, Armstrong & Rowland, Robert W. Armstrong and David A. Ring for Defendant and Respondent.

\* \* \* \* \* \*

Defendant and respondent John Spencer Clawson had befriended Vi Yang (Yang), the mentally-challenged adult son of his next-door neighbors, plaintiffs and appellants Thanh Yang and Buoi Ma. One day, without Clawson's knowledge, Yang went into Clawson's garage and was fatally burned in a fire. Appellants sued Clawson, alleging that his storage of chemicals in his garage created a dangerous condition that led to the fire. The trial court granted summary judgment, ruling the undisputed evidence showed appellants could not establish the element of causation necessary to support their negligence and premises liability claims.

We affirm. The trial court properly exercised its discretion in sustaining Clawson's objections to appellants' expert declarations because they relied on assumptions unsupported by the record. Summary judgment was properly granted, as the undisputed evidence showed the cause and source of ignition of the fire could not be determined. Thereafter, the trial court properly exercised its discretion in denying appellants' motions for a new trial and reconsideration.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Yang's Death.*

Clawson, a retiree in his upper 80's, lived next door to appellants and their mentally-challenged adult son Yang. Clawson liked to fix things and used his garage as a workshop. He stored a number of chemicals and solvents on the far north side of the garage on a high shelf in a ventilated area separated from the rest of the garage by a divider. None of the containers exhibited signs of corrosion or leaking. He also kept approximately two and one-half gallons of gasoline in the garage. He had never before suffered a fire or other incident involving the chemicals he stored.

Clawson befriended Yang. They talked to one another, took walks together and went out for coffee. On occasion Yang would rake leaves or mow the lawn for Clawson. Yang also used Clawson's lawnmower to mow his parents' lawn. Usually Clawson would fill the lawnmower's gas tank, but occasionally Yang would fill it, and Clawson always observed him doing so correctly. When Yang was present, Clawson would take the lawnmower out of the garage and onto a cement apron before filling it with gasoline.

2

Clawson advised him to be careful and he never saw Yang try to use any of the liquids in his garage except gasoline. Yang was capable of starting the lawnmower but not disassembling it.

Clawson had given appellants keys to his home for emergencies and access to his home when he was on vacation. He kept all doors to the garage locked. Yang could access Clawson's yard by climbing over a fence. On occasion, Clawson would see Yang in his yard in the morning, raking leaves, and once he observed Yang operating his lawnmower without him. He had never discovered Yang in the garage alone, as Yang would have needed a key to access it.

On September 7, 2011, Clawson returned to his home from an early morning walk and had started eating breakfast when he heard a knock at the side door. He did not recognize the individual and told him to go to the front door. When he opened the front door, he realized the individual was Yang and saw he was naked and badly burned. Clawson asked him what happened and Yang said "gasoline," and possibly "sorry" and "explosion." Clawson called 9-1-1 and waited in his front yard with Yang until paramedics arrived. Clawson had not heard an explosion and was unaware that Yang had been on his property. Yang later died at the hospital as a result of his injuries.

Yang's mother had seen Yang in Clawson's yard approximately 10 minutes before the fire, and yelled at him to come home, but Yang did not reply. She did not hear any explosion. Following the fire, she discovered that her set of Clawson's keys was missing.

Alhambra Fire Department Captain Dale Brown, a 28-year department veteran and captain for 25 years, investigated the fire. Clawson's garage was divided into three compartments—a rear workshop area and two front parking stalls. Brown observed a lawnmower inside the garage, with its gas cap and air cleaner container missing; an empty three-gallon metal gas can, a one-gallon metal can and charred debris lay nearby. A melted and charred plastic gas container lay in front of the lawnmower. A large pile of one-gallon metal cans was on the northeast side of the garage.

After debris had been removed, Brown determined the fire's point of origin to be in the center of the garage in the north parking stall, but he "was unable to locate a source

of ignition at the point of origin." Put another way, Brown stated he was able to determine the area of origin of the fire, but not its ignition source or cause. His report concluded: "The cause of this fire is undetermined. There are no witness[es], and the only person involved in this incident, died as a result of his injuries from the fire." Brown ruled out the cans on the northeast side of the garage as a potential ignition or fuel source. Brown observed that the rapid growth and spread of the fire was consistent with an ignitable liquid fuel source, and stated that he believed Yang was standing in a pool of ignitable liquid or surrounded by ignitable vapor which was ignited by "an unknown type of ignition source." He added that "[t]he ignition m[a]y have occurred as [Yang] tried to start a lawn mower," but conceded he "was unable to rule out sources of ignition such as electrical, mechanical or accidental."

Brown did not cite Clawson for any violation of state law or regulation regarding his storage of chemicals or any other conduct.

### *Complaint and Summary Judgment*.

In March 2012, appellants filed a wrongful death action against Clawson, alleging causes of action for negligence and premises liability. They alleged that Clawson owed a duty to Yang to keep his premises in a safe condition and breached that duty by maintaining the premises in an unsafe condition by storing "a very large amount of combustible and ignitable liquids such as gasoline in the garage of the premises." They generally alleged that Clawson was negligent in failing to warn of the condition and failing to protect the area, and that he knew or should have known the stored materials were a menace to Yang or anyone else on the premises. More specifically, they alleged: "The gasoline in the garage of the premises seeped and leaked through its containers, creating a pool of an ignitable liquid and ignitable vapor. With permission from the Defendant(s), decedent entered the garage to retrieve a landmower [*sic*], at which time the combustible liquid and vapor ignited, causing an explosion and burns to 100% of decedent's body." They sought general and special damages.

Clawson moved for summary judgment in October 2012. He asserted there was no evidence to show any act or omission on his part was the cause of the fire, and

4

therefore appellants could not establish an essential element of their negligence claim. In support of the motion he offered discovery responses, deposition excerpts, investigative reports from the Alhambra Fire Department, a coroner's report and a psychological evaluation of Yang.

Appellants opposed the motion, arguing triable issues of fact existed as to whether Clawson's asserted California Fire Code (Cal. Code Regs., tit. 24, § 9, ch. 27 et seq.) violations established negligence per se and whether Clawson's actions created a foreseeable risk of harm. They offered the declaration of construction, engineering and building and safety code expert Brad P. Avrit, who opined that he "agree[d] with Fire Captain Brown's deposition that [] the ignition source, i.e., the spark that ignited the fire, was likely the gas powered lawnmower in the Clawson garage, which ignited liquid gasoline and/or gasoline vapors and possibly also other chemical liquids or vapors in the Clawson garage." He further opined that Clawson committed a number of Fire Code violations in connection with his storage of flammable chemicals and that such violations were a major factor in causing the fire. Appellants also offered the declaration of arson, fire and explosion investigator Nina Scotti who echoed Avrit's opinion and added that evidence the filter had been removed from the lawnmower indicated that Yang "was likely trying to start the lawnmower, which likely generated the spark." She further opined that the cause of the fire "was likely from a combination of chemical vapor and gasoline from chemicals in the Clawson garage." She identified the same hazards in the garage outlined by Avrit, characterizing them as known dangers and lack of safety rather than code violations. In addition, they offered deposition excerpts from Brown and Clawson—excerpts in large part duplicative of those offered by Clawson.

Clawson replied and filed evidentiary objections to the entire declarations of Avrit and Scotti; he identified multiple grounds for the objections, citing the Evidence Code and case law. The primary objections were that the declarations lacked foundation, relied on improper matter and were based on speculation. He also submitted supplementary deposition excerpts. Appellants objected to the additional excerpts.

5

Following a January 2013 hearing, the trial court granted Clawson's motion for summary judgment. It ruled there was no triable issue of fact as to the element of causation, findings that appellants offered no evidence to show Clawson caused the fire or Yang's death. The order provided: "Fire Department Captain Dale Brown, who investigated the fire, was unable to determine the cause of the fire and was unable to determine the source of ignition for the fire. PLAINTIFFS' experts rely, at least in part, on the findings made by Captain Dale Brown." The trial court further ruled that appellants failed to demonstrate a triable issue with respect to the doctrine of res ipsa loquitor, as the undisputed evidence failed to show Clawson had exclusive control over the instrumentality causing the fire, even assuming the fire was caused by the lawnmower and/or gasoline. It also sustained Clawson's objections to the Avrit and Scotti declarations.

### *Motions for a New Trial and for Reconsideration.*

Shortly thereafter, appellants moved for a new trial and for reconsideration on the ground of new evidence in the form of a declaration from Brown. Brown averred that he desired to "clarify" his opinion expressed in his report and at his deposition, stating that while he "could not opine with <u>complete certainty</u> as to" the cause or ignition source of the fire, it had always been his "opinion in this matter that the <u>likely</u> ignition source was the lawnmower, which was the only ignition source at the origin of the fire" and "that it is <u>likely</u> the fire was caused by the lawnmower igniting the gasoline in the garage, in either liquid or vapor form." He added that other possible scenarios concerning the cause and ignition source of the fire seemed "very unlikely" to have occurred. Arguing that the trial court's order granting summary judgment misstated Brown's testimony, appellants also filed objections to the order and proposed judgment.

Clawson opposed the motions, citing multiple statements from Brown's report and deposition indicating he could not determine either a cause or origin of the fire. He also responded to appellants' objections to the summary judgment order and proposed judgment.

6

Following a March 2013 hearing, the trial court denied both motions.  It ruled that Brown's supplemental declaration afforded no basis for either a new trial or reconsideration, explaining that nothing in the declaration identified any wrongful conduct on the part of Clawson.  The trial court concluded:  "[T]here is no competent evidence from Captain Brown or any other source that negligence was the cause of the explosion/fire."

This appeal followed.

## DISCUSSION

Appellants contend the trial court erred in granting summary judgment, arguing they offered sufficient evidence to create a triable issue of fact as to whether Clawson breached a duty of care and whether that breach caused Yang's death.  In that regard, they also argue the trial court abused its discretion in sustaining Clawson's evidentiary objections to their expert declarations.  They further argue the trial court abused its discretion in denying their motions for a new trial and for reconsideration.  We find their contentions wholly without merit.

## I.     The Trial Court Properly Exercised Its Discretion in Excluding Appellants' Expert Declarations.

Because appellants' arguments concerning the propriety of summary judgment hinge in large part on the effect of the "evidence" offered by their experts, we first consider the challenges to the trial court's exclusion of the expert declarations.  We review the trial court's evidentiary rulings for an abuse of discretion.  (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)  The party challenging the rulings bears the burden of establishing abuse, which will be found only if the trial court's order exceeds the bounds of reason.  (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118.)

Initially, appellants contend the trial court abused its discretion in sustaining the evidentiary objections because they were not in the format specified by California Rules

7

of Court, rule 3.1354(b).[1]  As explained in *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 9, the purpose of the rules governing the formatting of evidentiary objections is similar to the rules governing other aspects of the summary judgment process—to facilitate the trial court's review of a complex motion by enabling it to consider "each piece of evidence and all of the objections applicable to that piece of evidence separately."  We conclude that Clawson's evidentiary objections substantially complied with the rule's formatting requirements by identifying the objectionable declarations, summarizing the content of the objectionable material and asserting the grounds and statutory basis for each objection.  Appellants fail to explain how they were prejudiced by the particular format of Clawson's objections, nor do they cite any authority to support their argument that a trial court lacks any discretion to rule on evidentiary objections that contain formatting errors.  Furthermore, in its order sustaining the evidentiary objections, the trial court addressed the merits of appellants' objections by stating that it appeared appellants' experts had relied on Brown's findings.  (See *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1378 [party's noncompliance with Cal. Rules of Court, rule 3.1354 deemed "of no moment" where trial court's ruling was made on "substantive evidentiary grounds"].)

Contrary to appellants' contention, the circumstances here are not akin to those in *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243.  There, the parties interposed over 800 individual evidentiary objections in over 300 pages and, with a single exception,

---

**1** Rule 3.1354(b) of the California Rules of Court provides in relevant part:  "All written objections to evidence must be served and filed separately from the other papers in support of or in opposition to the motion.  Objections on specific evidence may be referenced by the objection number in the right column of a separate statement in opposition or reply to a motion, but the objections must not be restated or reargued in the separate statement.  Each written objection must be numbered consecutively and must: [¶]  (1) Identify the name of the document in which the specific material objected to is located;  [¶]  (2) State the exhibit, title, page, and line number of the material objected to;  [¶]  (3) Quote or set forth the objectionable statement or material; and  [¶]  (4) State the grounds for each objection to that statement or material."  The rules further provide examples of two acceptable formats.

8

the trial court's order merely stated that all objections were sustained. (*Id*. at pp. 254–255.) The appellate court found the blanket ruling was an abuse of discretion, finding there was "no way that the trial court could properly have sustained 763 objections """guided and controlled . . . by fixed legal principles"""" and therefore the ruling failed to provide a meaningful basis for review. (*Id*. at p. 255.) Here, Clawson objected to two, similarly-phrased 10 and 11 paragraph declarations on the ground that the declarations misstated the factual predicate for the experts' conclusions, resulting in speculative conclusions. Given that the trial court's order expressly referenced the basis for the experts' conclusions, we find the order was guided by the application of specific legal principles that afford a basis for our review.

Turning to the substantive basis for the exclusion of appellants' expert declarations, we find no abuse of discretion. The court in *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 explained the role of expert testimony: "A properly qualified expert may offer an opinion relating to a subject that is beyond common experience, if that expert's opinion will assist the trier of fact. (Evid. Code, § 801, subd. (a).) Even so, the expert opinion may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact. [Citation.] Moreover, an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based. [Citations.]" (Accord, *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523 [an expert's "'opinion is only as good as the facts and reasons on which it is based'" and thus that "opinion, even if uncontradicted, may be rejected if the reasons given for it are unsound"]; *Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1135 ["The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed" and "[w]here an expert bases his conclusion upon assumptions which are not supported by the record, . . . or upon factors which are speculative, remote or conjectural, then his conclusion has no evidentiary value"].)

9

Here, both the Avrit and Scotti declarations opined that they "agree[d] with Fire Captain Brown's deposition that the ignition source, i.e., the spark that ignited this fire, was likely the gas powered lawnmower in the Clawson garage." Each declarant added that gasoline vapors and/or chemical liquids and/or vapors in the garage possibly contributed to the fire. As the trial court recognized, Brown's deposition in no way supported these conclusions. Brown testified that it was his "theory" that Yang overfilled the lawnmower's gas tank and then somehow the liquid gas or vapor was ignited. He continued that he could not "say exactly" how the fire ignited because "[t]here were other possible sources." Also for that reason, he testified that he could not determine the cause of the fire and rendered that same conclusion in his written report. With respect to the presence of leaking chemicals or vapors in the garage, Brown was asked whether the presence of leaking chemicals or vapors contributing to the fire's ignition was a viable theory, and he responded: "Anything is possible, but not probable. There was no indications [*sic*] that had an ignition source, ignited a vapor that led back to a can or an area of origin, would have moved from along that wall back over to where all the cans were located." Later clarifying this testimony, he added that he did not believe the flammable and combustible chemicals on the garage shelf in any way contributed to or caused the fire.

"[U]nder Evidence Code sections 801, subdivision (b) and 802, the trial court acts as a gatekeeper to exclude expert opinion testimony that is (1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative." (*Sargon Enterprises, Inc. v University of Southern California* (2012) 55 Cal.4th 747, 771–772.) Here, the opinions offered in the Avrit and Scotti declarations were premised on assumptions that were unsupported by the record. "It is not proper for an expert to base opinions on assumptions that are not supported by the record, or on information that would not be reasonably relied upon by other experts." (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 427.) "'"Like a house built on sand, the expert's opinion is no better than the facts on which it is based." [Citation.]' [Citation.]" (*In re*

10

*Alexander L.* (2007) 149 Cal.App.4th 605, 612.) Contrary to appellants' argument, the trial court did not improperly weigh appellants' expert declarations against Brown's deposition testimony. Rather, it determined that Brown's deposition testimony failed to provide the factual predicate for Avrit's and Scotti's opinions. "An expert opinion has no value if its basis is unsound." (*Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564.)

Appellants' expert declarations are no different than the expert declaration offered in *Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222. There, the plaintiff alleged he suffered injury from exposure to asbestos through his job as a plumber and pipefitter. He sued a general contractor who moved for summary judgment on the ground the plaintiff had no evidence that the exposure occurred as a result of its activity. In opposition to summary judgment, the plaintiff submitted a declaration from an expert that relied on federal safety regulations presuming that certain materials contained asbestos and records showing asbestos abatement activities had occurred at the jobsites. (*Id.* at pp. 1226– 1227.) The appellate court affirmed summary judgment, and further affirmed the order excluding the expert declaration for a lack of foundation given the absence of "any factual support for the proposition that the challenged jobsites contained asbestos during the relevant time period." (*Id.* at pp. 1232, 1233.) The court explained that the expert had relied on the plaintiff's deposition testimony describing his work with materials that "probably" contained asbestos; in turn, the expert averred that the plaintiff worked with materials "'presumed to contain asbestos'" according to the regulations. (*Id.* at pp. 1233– 1234.) The *Casey* court determined that the expert's "conclusions are speculative and lack a sufficient foundation. His conclusions are based, in part, on Casey's speculation that the dust and debris contained asbestos, an assertion lacking a sufficient factual basis. [The expert's] conclusion also rests on two regulatory presumptions that are similarly lacking any factual basis in the instant case." (*Id.* at p. 1234.)

Here, likewise, Avrit's declaration first presumed that Brown had opined the stored chemicals contributed to the cause of the fire, and then cited a number of Fire Code provisions to support his conclusion that Clawson's storage of those chemicals was

11

a contributing factor. Without relying on code provisions, Scotti similarly opined that Clawson's unsafe storage and lack of ventilation contributed to the fire on the basis of Brown's asserted conclusion that those chemicals or their vapors played a role in the fire. As in *Casey v. Perini Corp., supra,* 206 Cal.App.4th at page 1234, Avrit's and Scotti's "declaration[s] do[] nothing more than suggest the possibility of [causation] without any basis in fact." Stated another way, "'an expert's opinion that something *could* be true if certain assumed facts are true, without any foundation for concluding those assumed facts exist' [citation], has no evidentiary value." (*Bushling v. Fremont Medical Center, supra,* 117 Cal.App.4th at p. 510 [expert opinions that an injury could have occurred from certain actions lacked evidentiary value where there was no evidence such actions had occurred, and thus the "opinions [were] nothing more than a statement that the injury could have been caused by defendants' negligence in one of the ways they specify"].) Because the assumptions on which appellants' experts relied lacked evidentiary support, the trial court properly exercised its discretion in sustaining Clawson's objections to the expert declarations.

## II. The Trial Court Properly Granted Summary Judgment.

Summary judgment is warranted where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears the burden of persuasion that one or more elements of the cause of action in question cannot be established or that there is a complete defense to the action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Once the moving party's burden is met, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact. (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261.) "'[I]n order to avert summary judgment the plaintiff must produce *substantial* responsive evidence sufficient to establish the existence of a triable issue of material fact on the issues raised by the plaintiff's causes of action.' [Citation.]" (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 417.) The plaintiff must produce "substantial" responsive evidence sufficient to establish a triable issue of fact. (*Sangster*

12

*v. Paetkau* (1998) 68 Cal.App.4th 151, 163.) "[R]esponsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact." (*Ibid.*)

We review a grant of summary judgment de novo, considering "'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.'" (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612.) "In independently reviewing a motion for summary judgment, we apply the same three-step analysis used by the superior court. We identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue." (*Silva v. Lucky Stores, Inc., supra,* 65 Cal.App.4th at p. 261.) We independently decide whether the undisputed facts warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

Turning first to the issues identified by the pleadings, appellants sought to impose liability against Clawson under theories of negligence and premises liability. Their allegations under each theory were virtually identical, providing in substance that Clawson owned and maintained a large amount of combustible and ignitable liquids, including gasoline, in his garage; Clawson knew or should have known of this dangerous condition and failed to provide any warning; the gasoline leaked and seeped through its container which created an ignitable pool of liquid and vapor; the combustible liquid and vapor ignited after Yang entered the garage to retrieve a lawnmower; an explosion resulted, causing Yang's severe injury and death.

"The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917–918.) The elements of a cause of action for premises liability are the same as those for negligence: duty, breach, causation, and damages. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205; see Civ. Code, § 1714, subd. (a).)" (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.) The causation element of

13

negligence "is satisfied when the plaintiff establishes (1) that the defendant's breach of duty (his negligent act or omission) was a substantial factor in bringing about the plaintiff's harm and (2) that there is no rule of law relieving the defendant of liability." (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 481.)

Here, Clawson met his threshold burden on summary judgment to show that appellants could not establish that any act or omission on his part was the cause of the fire or the cause of Yang's death. The undisputed evidence showed that Clawson had maintained the storage of chemicals in his garage without a fire or other incident. Shortly before the fire, Yang entered Clawson's garage; the keys that Clawson had provided to Yang's parents were later found to be missing. Until he saw Yang at his door, Clawson was unaware that Yang had been in his garage.

Following an investigation of the fire, Brown's written report concluded the cause of the fire was undetermined and added that the ignition source could not be identified. In his deposition, Brown confirmed that he was unable to ascertain the fire's cause:

"Q. [COUNSEL] You were not able to determine the source of the ignition of the fire; correct?

"A. [BROWN] Correct.

"Q. [COUNSEL] And you were not able to determine the cause of the fire; correct?

"A. [BROWN] Correct."

Correspondingly, Brown answered "Yes" when asked "isn't it true that in the course of your investigation and research and experience and background, you cannot offer to a judge or jury the cause of the fire, other than it started?' Indeed, multiple times throughout his deposition, Brown confirmed that neither the cause of the fire nor its ignition source could be determined. He posited several hypotheses as to how the fire started, including that Yang was inside the garage when he became enveloped in fuel or vapor, and something ignited him; Yang was fueling the lawnmower when gasoline spilled and something then ignited; Yang was playing with matches; or a third party was inside the garage, disassembled the lawnmower, started the fire and ran out the back

14

garage door. But Brown added that the evidence did not support his "best" hypothesis, which was that Yang was in the garage when the fire consumed him, and then ran out to the side of Clawson's house. He conceded he had insufficient evidence even to place Yang in the garage at any point. The trial court correctly determined that this evidence satisfied Clawson's burden to show appellants could not establish that anything he did or did not do caused the fire.

Appellants failed to raise a triable issue of fact. Their primary contention on appeal is premised on their reference to a number of California Fire Code provisions concerning the storage and handling of hazardous materials. (See Cal. Code Regs., tit. 24, § 9, ch. 27 et seq.) They argue that evidence showing Clawson failed to comply with these regulations raised a triable issue of fact as to his negligence. To establish liability pursuant to a theory of negligence per se a plaintiff must establish (1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to a person or property; (3) the death or injury resulted from an occurrence of the nature to which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or injury to his person or property was in the class of people whom the statute, ordinance, or regulation was designed to protect. (Evid. Code, § 669, subd. (a).) Even if we were to assume the evidence showed that Clawson's storage of chemicals in his garage violated a statute or regulation,[2] there was no evidence to show that such violation caused the fire. To the contrary, Brown testified he did not believe that any of the combustible or flammable stored chemicals caused or contributed to the fire. In response to the question whether he believed the containers leaked resulting in the chemicals being ignited, Brown answered: "Anything is possible, but not probable." Moreover, though Brown testified about the

---

[2]     We note that nothing in the record supports this assumption. Brown testified he had insufficient information to determine whether the chemicals were properly stored, but added that they were stored the way in which he typically encountered such materials in a residential setting. He was unaware that Clawson's storage violated any codes or regulations, and he did not exercise his power to cite him for any such violations.

risks stemming from improperly stored gasoline, he had no evidence to show that the gasoline in Clawson's garage was improperly stored or capped.

Appellants further argue that the undisputed evidence offered by Clawson was sufficient to raise an inference of negligence. They contend that enabling a mentally-challenged individual to have access to an area that contained hazardous chemicals as well as a lawnmower—or a potential ignition source—raised a triable issue of fact as to whether Clawson was negligent. Again, even if were to assume that the evidence showed Clawson "permitted" Yang access to his garage without his own presence, that Clawson's chemical storage constituted a hazard, and that the lawnmower was a potential ignition source, such showing was insufficient to raise a triable issue of fact. Although we resolve doubts in favor of the party opposing summary judgment, there are limits on what inferences may be drawn from circumstantial evidence in the context of a summary judgment motion. The court must "determine what any evidence or inference *could show or imply to a reasonable trier of fact.*" (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 856.) "We will not . . . draw inferences from thin air." (*Leslie G. v. Perry & Associates, supra,* 43 Cal.App.4th at p. 483.) Where appellants seek to establish an essential element of their case by circumstantial evidence, they must show more than the inferences they seek to draw are consistent with their theory; "[i]nstead, [they] must show that the inferences favorable to [them] are *more reasonable or probable* than those against [them]." (*Ibid.*)

Here, at best, the inferences to be drawn from the evidence were inconclusive and showed no more than a possibility that Yang's death could have occurred as appellants suggested. "[I]f the court determines that all of the evidence presented by the plaintiff, and all of the [reasonable] inferences drawn therefrom, show and imply [the existence of the causation element] *only as likely as* [its nonexistence] *or even less likely,* it must then grant the defendant['s] motion for summary judgment, even apart from any evidence presented by the defendant[] or any inferences drawn therefrom, because a reasonable trier of fact could not find for the plaintiff." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 857.) It is well established that "'proof of causation cannot be based on

mere speculation, conjecture and inferences drawn from other inferences to reach a conclusion unsupported by any real evidence. . . . [¶] . . . [W]here there is no factual basis . . . for [the plaintiff's] general assertion of causation, the conclusion is unavoidable that summary judgment was properly granted.' [Citation.]" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 775; accord, *Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 314; *Padilla v. Rodas* (2008) 160 Cal.App.4th 742, 752; *Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1298–1299.)

**III.    The Trial Court Properly Exercised Its Discretion in Denying Appellants' Motion for a New Trial and Motion for Reconsideration.**

In an effort to avoid the unavoidable grant of summary judgment, appellants moved for a new trial and for reconsideration. Both motions relied on the new "fact" that appellants procured a declaration from Brown stating his opinion that "the <u>likely</u> ignition source was the lawnmower, which was the only ignition source at the origin of the fire" and "that it is <u>likely</u> the fire was caused by the lawnmower igniting the gasoline in the garage, in either liquid or vapor form." He characterized other potential causes and ignition sources of the fire as "unlikely."

"To prevail on a motion for a new trial based on newly discovered evidence, the moving party must demonstrate that '"(1) the evidence is newly discovered; (2) he or she exercised reasonable diligence in discovering and producing it; and (3) it is material to the [] party's case." [Citation.]' [Citations.]" (*Hall v. Goodwill Industries of Southern California* (2011) 193 Cal.App.4th 718, 731.) Likewise, "'the party seeking reconsideration must provide not only new evidence but also a satisfactory explanation for the failure to produce that evidence at an earlier time. In short, the moving party's burden is the same as that of a party seeking new trial on the ground of "newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." (Code Civ. Proc., § 657, subd. 4.)' [Citations.]" (*Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1198, italics omitted.)

In its order denying both motions, the trial court ruled that Brown's declaration afforded no basis for a different ruling, as it failed to offer any evidence that Clawson's negligence was a source or cause of the fire. We review the order for an abuse of discretion. (E.g., *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 42 [reconsideration]; *Garcia v. Rehrig Internat., Inc.* (2002) 99 Cal.App.4th 869, 874 [new trial].) "'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]'" (*Polanski v. Superior Court* (2009) 180 Cal.App.4th 507, 537.)

Here, the trial court was well within its discretion to deny the motions, as Brown's declaration was not new evidence. Brown merely restated his previous opinion in language designed to support appellants' position, stating: "I wish to clarify my earlier opinion in this matter, i.e., that I could not determine the ignition source or cause of the fire. My intention in so indicating was to communicate that I could not opine with <u>complete certainty</u> as to those items, as there are several possibilities." Brown's clarification was based on the precise evidence that was before the trial court at the time of summary judgment. It was not the result of any newly discovered evidence and did not provide a basis for reconsidering summary judgment.

In addition to the absence of new evidence, appellants failed to demonstrate that the declaration was material. A party cannot create a triable issue of material fact by submitting a declaration in opposition to a motion for summary judgment that contradicts an admission or concession made during discovery. (*Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12; accord, *Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 549 ["In reviewing motions for summary judgment or adjudication, courts have long tended to treat affidavits repudiating previous testimony as not constituting substantial evidence of the existence of a triable issue of fact"]; *Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613 ["Admissions or concessions made during the course of discovery govern and control over contrary declarations lodged at a hearing on a motion

for summary judgment"].)  The circumstances here are no different than those in *Jacobs v. Fire Ins. Exchange* (1995) 36 Cal.App.4th 1258, 1270, where the appellate court determined the trial court properly concluded no triable issue of fact was raised by an expert's declaration averring that a shooter "probably" lacked the capacity to understand his actions, which followed his deposition testimony indicating he had no opinion whether the shooter comprehended he could cause injury.

Because Brown's declaration was neither new nor material, it afforded no basis for granting a new trial or reconsideration.  The trial court properly exercised its discretion in denying appellants' motions challenging the grant of summary judgment.

**DISPOSITION**

The judgment is affirmed.  Clawson is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

FERNS

We concur:


_____, P. J.

BOREN


_____, J.

CHAVEZ

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.