Filed 2/25/14

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MELINA JOHNSON, | C073052 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201000092966CUPOGDS) |
| v. | |
| BENORAD PRASAD et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David Brown, Judge. Reversed in part and affirmed in part.

Hal F. Seibert for Plaintiff and Appellant.

Donahue Davies, James Donahue, Michael E. Myers, and Stephen J. Mackey for Defendants and Respondents.

Did homeowners Benorad and Brig Prasad (homeowners) and property management company Century 21 Real Estate (Century 21) (collectively defendants) owe a duty of care to four-year-old Allen Soucy (a guest of tenants), who drowned in the

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part III of the Discussion.

1

swimming pool of a house owned by homeowners and rented to tenants?  The trial court held "no" in a wrongful death negligence lawsuit brought by the child's mother, plaintiff Melina Johnson.  The trial court also found no triable issues of fact with respect to breach of any duty and causation.

We reverse the judgment as to the homeowners.  We hold as a matter of law that the homeowners here, who knowingly rented a home with a maintained pool, owed a duty of reasonable care to the four-year-old boy to protect him from drowning in the pool.  We further hold there are triable issues of fact as to whether, one, the homeowners breached that duty by failing to install a fence around the perimeter of the pool or a self-closing or self-latching mechanism on the only door leading from the house to the pool and, two, whether any such breach was a substantial factor in bringing about the child's death.

We affirm the judgment as to Century 21.  Plaintiff's only allegation in her complaint against the property management company was that it negligently "failed to ensure that the premises met safety code prior to renting the premises to the public."  And on appeal, plaintiff admits that defendants were exempt from complying with the only "safety code" anyone has identified because of the time the pool was built.

FACTUAL AND PROCEDURAL BACKGROUND

The homeowners bought a house with an in-ground backyard swimming pool in 2000.  The pool was built in 1976 or 1977 and complied with state and local ordinances at that time.  The homeowners did not alter the pool.  Around the perimeter of the property was a six-foot wooden fence that prevented access to the backyard.  The only direct access from the house to the pool was through the kitchen.  That access was through a sliding glass door with a security gate over it.  The security gate did not have a self-closing mechanism.  Since 2009, the house was managed for the homeowners by Century 21.

2

In June 2009, Tomica Johnson and her son Brandon Johnson (both of whom are unrelated to plaintiff) rented the property.

On June 28, 2009, Allen's grandmother (Michelle Volpi, who was named as a defendant in the trial court) and the grandmother's husband took Allen to a get-together at the house. When they got there, Allen's father (Andre Soucy, who was Volpi's son, and who was also named as a defendant in the trial court) was already there, as were a number of other people, including children. They all went in the pool. Eventually, everyone got out. The grandmother went inside the house and did not close the security gate or the sliding glass door behind her because others were still coming in. Allen also went inside the house. At some point, the grandmother lost track of Allen. As it turns out, Allen had gone outside the house to the backyard. When he was discovered, he was at the bottom of the pool. Allen was kept alive on a ventilator for 19 days and then died.

Allen's mother filed a lawsuit for wrongful death, alleging the grandmother and father were negligent in supervising Allen, the homeowners were negligent in failing to properly fence the pool or otherwise protect a child from accidently falling into the pool, and Century 21 was negligent in "fail[ing] to ensure that the premises met safety code prior to renting the premises to the public."

The homeowners and Century 21 answered and later moved for summary judgment. As to Century 21, defendants argued that "the allegations that the swimming pool does not conform to the applicable swimming pool safety code provisions fail as a matter of law. The evidence is that the property and the swimming pool fully . . . complied with the applicable statutes and ordinances." Moreover, they argue they did not owe a duty to Allen and his mother to exercise due care, they did not breach any duty because there was no dangerous condition on the property, and even if there was, they had no notice of a dangerous condition, and they did not cause the injury.

The trial court granted the summary judgment motion. The court reasoned that homeowners and Century 21 "had no duty to inspect the premises"; "there was no reason

3

to expect children to be playing in the pool,"; "the pool was not a 'nuisance' or an unreasonably dangerous condition of property"; "nothing these defendants did or failed to do created any type of dangerous condition or in any way contributed to this accident"; there was no evidence that it was more likely than not that the conduct of the homeowners and Century 21 was a cause in fact of the drowning; and "[e]ven the security gate and sliding glass door could not have been involved in this accident, since they were left open on purpose."

The trial court then entered judgment in favor of homeowners and Century 21. Plaintiff timely appealed.

DISCUSSION

Plaintiff contends the trial court erred in granting summary judgment in defendants' favor because defendants owed a duty of care to maintain the pool in a reasonably safe condition and because there were triable issues of fact as to whether defendants breached that duty and were a cause of injury here.[1]

"The elements of a cause of action for negligence are duty, breach, causation, and damages." (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 529.) We consider the first three elements in turn, in view of plaintiff's contentions above and the trial court's finding that, as a matter of law, defendants owed no duty of care to Allen, there was no breach of any duty toward him, and none of defendants' actions caused injury to plaintiff.

In doing so, we keep in mind the following standard of review: "On appeal after a motion for summary judgment has been granted, we review the record de novo,

---

[1] Defendants argue plaintiff never stated in her complaint what defendants should have done to prevent the drowning. Not so. The complaint alleged the Prasads were negligent in failing to "properly fence[] or otherwise protect[] . . . a child [from] accidently falling into the swimming pool" and Century 21 was negligent in "fail[ing] to ensure that the premises met safety code prior to renting the premises to the public." The trial court's ruling discussed fencing and the lack of a self-closing, self-latching mechanism on the only door leading from the house to the pool.

4

considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

## I

### *The Homeowners Owed A Duty Of Care To Plaintiff*
### *Vis-A-Vis Her Son As A Matter Of Law*

"[T]he basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property."[2] (*Rowland v. Christian* (1968) 69 Cal.2d 108, 118-119 (*Rowland*).) Thus, "[g]enerally, a landowner has a duty to maintain the land in a reasonably safe condition." (*Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301, 306.) "The existence of the landlord's duty to others to maintain the property in a reasonably safe condition is a question of law for the court." (*Id* at p. 305.)

Here, the question we must answer as a matter of law is whether the homeowners owed four-year-old Allen a duty of reasonable care to protect him from drowning in a swimming pool at a house they rented to tenants. "In determining a duty's existence and scope, our precedents call for consideration of several factors: ' "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the

---

[2]     Civil Code section 1714, subdivision (a) reads as follows: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ."

5

closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." ' " (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213, quoting *Rowland, supra,* 69 Cal.2d at p. 113.)  "Foreseeability and the extent of the burden to the defendant are ordinarily the crucial considerations, but in a given case one or more of the other *Rowland* factors may be determinative of the duty analysis." (*Castaneda*, at p. 1213.)

We begin, then, with foreseeability of harm to plaintiff vis-a-vis her four-year-old Allen.   In finding no duty, the trial court reasoned, "there was no reason to expect children to be playing in the pool."  This conclusion ignored the facts of this case and the realities of pools and children.  The lease agreement specifically mentioned maintenance of the pool, assigned that burden to the "landlord," and stated "tenant was to allow access."  Thus, the homeowners knew a maintained pool was included with rental of the house.  A reasonable expectation was that people, including children, use a maintained pool.  It was also a reasonable expectation that children, especially young children, approach pools, regardless of their capacity to swim, thus exposing themselves to the danger of drowning.  "It is a matter of common experience that children of tender years are guided in their actions by childish instincts, and are lacking in that discretion which is ordinarily sufficient to enable those of more mature years to appreciate and avoid danger, and in proportion to this lack of judgment on their part, the care which must be observed toward them by others is increased."   (*Barrett v. Southern Pacific Co.* (1891) 91 Cal. 296, 302-303.)  Where the homeowners knew they were renting out a house with a maintained pool, it was foreseeable that children would be on the property.  It was also foreseeable that children would approach the pool, regardless of their  capacity to swim, thus exposing themselves to the danger of drowning.  Thus, the foreseeability of harm to

a young child such as Allen weighed in favor of imposing a duty of care on the homeowners.

We next discuss the other "ordinarily . . . crucial consideration" (*Castaneda v. Olsher*, *supra*, 41 Cal.4th at p. 1213), namely, the "extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach" (*Rowland, supra,* 69 Cal.2d at p. 113). Although this factor was not discussed by the trial court, the trial court did discuss a statute that we find informs this factor.

In holding that defendants were not negligent per se in failing to fence the pool or install a self-closing or self-latching mechanism on the door, the trial court noted that defendants did not violate the Swimming Pool Safety Act as codified in Health and Safety Code section 115922 (added by Stats. 1996, ch. 925, §3.5). The statute requires (subject to certain exceptions) that a new or remodeled pool or spa at a private, single-family home be equipped with at least one of seven enumerated drowning prevention safety features.[3] That statute applies only to the "*construction of a new* swimming pool

_____

[3]    The trial court erroneously stated that defendants complied with the statute, but they actually were exempt from complying because the statute applied only to newly-constructed or remodeled pools.

Health and Safety Code section 115922 reads in pertinent part as follows:

"(a) Commencing January 1, 2007, except as provided in Section 115925, whenever a building permit is issued for construction of a new swimming pool or spa, or any building permit is issued for remodeling of an existing pool or spa, at a private, single-family home, it shall be equipped with at least one of the following seven drowning prevention safety features:  [¶]  (1) The pool shall be isolated from access to a home by an enclosure . . . .  [¶]  (2) The pool shall incorporate removable mesh pool fencing . . . in conjunction with a gate that is self-closing and self-latching and can accommodate a key lockable device.  [¶]  (3) The pool shall be equipped with an approved safety pool cover . . . .  [¶]  (4) The residence shall be equipped with exit alarms on those doors providing direct access to the pool.  [¶]  (5) All doors providing direct access from the home to the swimming pool shall be equipped with a self-closing, self-

7

or spa, or any building permit [that] is issued for *remodeling* of an existing pool or spa, at a private, single-family home." (Health & Saf. Code, § 115922, subd. (a), italics added.) Here, the homeowners bought the house with the pool in 2000 and had not "repaired, rebuilt, remodeled, or otherwise altered the pool" since then. Although these facts make it such that the homeowners were exempt from complying with the statute, the existence of this statute informs the extent of burden to the homeowners and consequences to the community of imposing a duty to exercise care with resulting liability for breach.

By requiring at least one drowning prevention safety feature on newly constructed or remodeled pools and spas in single family homes, the Swimming Pool Safety Act reflects the policy of this state to impose some responsibility on certain homeowners to prevent swimming pool drowning. The extent of the burdens on these homeowners is money and time to add the safety feature or retrofit with the feature. The benefit to the community is saved lives.

This burden and benefit reflected by enactment of the Swimming Pool Safety Act is similar to the way we see things here regarding the "extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach." (*Rowland*, *supra*, 69 Cal.2d at p. 113.) The burden on the homeowners was time and money to add a safety feature that might prevent the drowning of a child. This burden was somewhat mitigated by the different drowning prevention safety features available to the homeowners. In the trial court, the features discussed were a fence around the perimeter of the pool or something more simple, such as a self-closing or self-latching mechanism on the door from the only available route from the

_____

latching device with a release mechanism placed no lower than 54 inches above the floor. [¶] (6) Swimming pool alarms that, when placed in pools, will sound upon detection of accidental or unauthorized entrance into the water. . . . [¶] (7) Other means of protection, if the degree of protection afforded is equal to or greater than that afforded by any of the devices set forth above, and have been independently verified by an approved testing laboratory . . . ."

house to the pool. The "consequence[] to the community" was the possibility of a saved life. We find this factor weighed in favor of imposing a duty on the homeowners here.

We next consider the other *Rowland* factors to see whether they are "determinative of the duty analysis." (*Castaneda v. Olsher*, *supra*, 41 Cal.4th at p. 1213.) The remaining factors are "the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm. . . , and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland, supra,* 69 Cal.2d at p. 113.) As even defendants state, "[t]here is no question that the plaintiff suffered injury as her child died as a result of this tragic accident." As to the closeness of connection between the homeowners' conduct and plaintiff's injury, if there was a fence around the perimeter of the pool or a self-closing or self-latching mechanism on the door, Allen may not have been able to access the pool at all. In evaluating the closeness of the connection, we are mindful that there was the added factor that Allen's grandmother and father failed to prevent him from going back outside unsupervised. Still, the opportunity for Allen to drown in the pool may have been diminished had the pool's access been limited by one of the drowning prevention safety features discussed in the trial court. Thus, there was also some degree of moral blame on the homeowners for failing to adequately protect a young child such as Allen from drowning. Finally, considering the last *Rowland* factor, homeowners insurance is typically available to cover the risk that eventuated here. (See *Salinas v. Martin* (2008) 166 Cal.App.4th 404, 416 [making a similar observation about insurance available to homeowners where a gardener's dog attacked an employee of a contractor who was working at the property owner's house].)

In sum, we have considered all the *Rowland* factors. In our consideration, all weighed in favor of imposing a duty of care on the homeowners to protect four-year-old Allen from drowning in the swimming pool. The trial court erred in finding the opposite as a matter of law.

## II

*There Are Triable Issues Of Fact On Whether The Homeowners*
*Breached Their Duty Of Care And Whether Their Actions*
*Were A Substantial Factor In Bringing About The Injury*

The second and third elements of a cause of action for negligence are breach of the duty of care and causation. (*Melton v. Boustred*, *supra*, 183 Cal.App.4th at p. 529.) "[T]he elements of breach of that duty and causation are ordinarily questions of fact for the jury's determination." (*McGarry v. Sax* (2008) 158 Cal.App.4th 983, 994.) As to these elements here, the trial court found as a matter of law "nothing these defendants did or failed to do created any type of dangerous condition or in any way contributed to this accident"; there was no evidence that it was more likely than not that the conduct of the homeowners and Century 21 was a cause in fact of the drowning; and "[e]ven the security gate and sliding glass door could not have been involved in this accident, since they were left open on purpose."

The question to be resolved is whether the homeowners breached the duty of care to Allen by failing to install a fence around the perimeter of the pool or a self-closing or self-latching mechanism on the door. The homeowners argue that since there was a perimeter fence around the property that "w[as] essentially 'childproof,' " they cannot be required to add a fence around the perimeter of the swimming pool or locks or latches on

10

the kitchen door leading to the pool.[4] Whether a reasonably prudent homeowner were or were not required to add further precautions is not one for us to decide as a matter of law. A jury could conclude a reasonably prudent homeowner should have taken further precautions because it was foreseeable that a child could still access the pool and could drown or be injured. Or it could decide the opposite. Where reasonable minds could differ, it was error for the trial court to decide that question as a matter of law.

The question to be resolved as to causation is whether "defendant's act or omission was a substantial factor in bringing about the injury." (*Padilla v. Rodas* (2008) 160 Cal.App.4th 742, 752, citing *Saelzler v. Advanced Group* 400 (2001) 25 Cal.4th 763, 778.) In *Padilla*, the appellate court found no causation as a matter of law because "even [assuming] that the gate was defective for lack of a self-latching mechanism, [the plaintiff] cannot establish the element of causation." (*Padilla*, at p. 752.) There, "[t]he probabilities [we]re evenly balanced as to whether [the two-year-old who drowned] gained entrance to the pool through the side yard gate, the 'door' on the other side of the house, or the sliding glass doors of the house." (*Id*. at pp. 742, 752-753.)

Homeowners here argue this case is analogous to *Padilla* because Allen's death "was not a result of an accidental fall into the pool. . . . Rather, the injury occurred solely due to the responsible adults' failure to supervise their child." *Padilla* does not apply for two reasons. One, unlike *Padilla*, there was no dispute that Allen got out of the house through the only door from the house that led to the pool -- a door that did not have a self-closing, self-latching mechanism. And two, the issue of the grandmother's negligence or the father's negligence in failing to supervise Allen is separate from defendants' negligence. Plaintiff must be allowed to show that the homeowners' negligence was "a substantial factor in causing plaintiff's injuries." (*Saelzler v.*

---

**4** The argument assumes no children ever entered the house, not a reasonable assumption.

11

*Advanced Group 400*, *supra*, 25 Cal.4th at p. 772.)  Contributory negligence questions are for the jury (*Wigodsky v. Southern Pac. Co.* (1969) 270 Cal.App.2d 51, 57) and made it such that the causation issue here was not amenable for summary adjudication.

### III

### *There Was No Triable Issue Of Fact With Respect To*
### *The Specific Allegation Of Liability In The Complaint Against Century 21*

On appeal, plaintiff has treated the allegations against the homeowners and Century 21 as one and the same.  Her identical treatment of both parties on appeal ignores the fact her complaint pled only a narrow allegation against Century 21. Plaintiff's theory of liability in her complaint as to Century 21 was that "Century 21 was negligent in "fail[ing] to ensure that the premises met safety code prior to renting the premises to the public."  On appeal, plaintiff admits that Century 21 was "exempt from compliance" because Health and Safety Code section 115922 which would have required a drowning prevention device such as a self-closing door or a fence around the pool did not exist at the time the pool was built.  Thus, there was no triable issue of fact with respect to the specific allegation of liability against Century 21.  In other words, plaintiff cannot prevail on a claim that Century 21 negligently "failed to ensure that the premises met safety code prior to renting the premises to the public" when plaintiff admits that the pool was exempt from the only "safety code" anyone has identified.

### DISPOSITION

As to the homeowners, the judgment is reversed and the trial court is directed to vacate its order granting the motion for summary judgment and enter a new order denying the motion.

As to Century 21, the judgment is affirmed.

The parties are to bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


      ROBIE      , J.


We concur:


      BLEASE      , Acting P. J.


      BUTZ      , J.