Filed 8/24/16  Bradford v. Mann CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JASON BRADFORD,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TERRENCE W. MANN,<br>INDIVIDUALLY and as TRUSTEE, etc.,<br><br>    Defendant and Respondent. | D068664<br><br><br><br>(Super. Ct. No.<br>  37-2014-00005110-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Paoli & Purdy, and William M. Delli Paoli for Plaintiff and Appellant.

Shoecraft Burton and Devin Thomas Shoecraft, Michelle L. Burton, for Defendant and Respondent.

Plaintiff and appellant Jason Bradford appeals from a summary judgment entered in favor of Terrence Mann, individually and as trustee of the Terrence W. Mann Trust, on Bradford's complaint for negligent supervision and "premises liability–wrongful death"

arising from the drowning deaths of Bradford's two children in a swimming pool on Mann's residential rental property. The trial court granted summary judgment on grounds that for purposes of his negligence claim Bradford could not establish causation, and with respect to his claim of wrongful death, he could not prove any neglect by Mann caused his children's deaths or that he had standing to pursue such a claim. Bradford contends the court erred because Mann owed him a duty of care with respect to his children as a matter of law, and there were triable issues of material fact as to whether Mann's conduct as a homeowner and landlord breached that duty of care, as well as whether it was a substantial factor in bringing about the injury. Bradford also contends he presented evidence that he resided with and supported his children until his incarceration, which conferred standing on him to maintain the action.

We conclude summary judgment was properly granted on the issue of Bradford's standing to maintain a wrongful death cause of action, and also on the issue of Mann's duty of care. Consequently, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.' " (*Wilson v. 21 Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717; *Elk Hills Power, LLC v. Board of Education* (2013) 57 Cal.4th 593, 606.) We consider all the evidence in the moving and opposing papers except that to which objections were made and sustained, liberally construing Bradford's evidence and resolving any doubts in

2

the evidence in his favor. (*Wilson v. 21 Century Ins. Co*., at p. 717; Code Civ. Proc., § 437c, subd. (c).)[1]

Since 2007, Mann or his trust has owned a single family residence having an in-ground backyard swimming pool (at times, the property). After briefly living in the house, Mann began renting it to tenants. Access to the backyard from the street in front of the property was via three locking gates. From the home's interior, the property's backyard could be accessed via two sliding glass doors covered by wrought iron security gates with deadbolt locks. Those doors led to a patio balcony enclosed by a fence having a three-foot high latching gate. During Mann's ownership, no remodeling, reconstruction, or similar work has been done on the pool.

In early 2012, Mann rented the entire property to Larry D'Angelo, an adult man in his early 40's, and they entered into a lease agreement providing D'Angelo would be the sole tenant residing there and would not engage in any illegal activity on the property during his tenancy. At that time, there was no fencing around the pool's perimeter. Mann inspected the property before D'Angelo took possession, but D'Angelo never asked Mann

---

[1] Where Mann relies on factual allegations of Bradford's complaint, we accept those as judicial admissions that Bradford may not contradict in opposing summary judgment. (See *Mark Tanner Construction, Inc. v. HUB Internat. Ins. Services, Inc.* (2014) 224 Cal.App.4th 574, 487 [" ' "A defendant moving for summary judgment may rely on the allegations contained in the plaintiff's complaint, which constitute judicial admissions. As such they are conclusive concessions of the truth of a matter and have the effect of removing it from the issues." [Citations.]' [Citation.] The admissions may not be contradicted in opposing summary judgment"]; *Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1324.) However, a mere conclusion, or mixed factual-legal conclusion, in a complaint is not considered a binding judicial admission and may be contradicted by a declaration or other evidence in order to overcome a motion for summary judgment. (*Castillo*, at p. 1324.)

or gave him permission to enter the property during his tenancy, and Mann had no reason to bother him. About a year and a half later, Tassie Ann Behrens and her two toddler children,[2] of which Bradford was the natural father, were living with or visiting D'Angelo at the property. D'Angelo and Behrens were using the property as an illegal drug grow house for marijuana and a crash house for drug users to stay and use illegal drugs. On the evening of May 12, 2013, Behrens and D'Angelo consumed methamphetamine and marijuana and as a result fell asleep. While Behrens and D'Angelo were sleeping, the children exited the house, accessed the pool and drowned.

Behrens thereafter pleaded guilty to felony child abuse. Bradford, who was indicted in 2011 for conspiracy to distribute methamphetamine and sentenced to federal prison in December 2012, was incarcerated at the time of the children's deaths.

In March 2014, Bradford sued Behrens, D'Angelo, and Mann, setting forth causes of action for negligent supervision against Behrens and D'Angelo, and wrongful death under a premises liability theory against Mann and D'Angelo. He alleged Mann owed a duty of care to the children to ensure his property was equipped with safeguards to prevent them from accessing the pool when an adult was not in the vicinity or available, and that he failed to exercise reasonable care as he had actual or constructive notice that the pool area was not fenced or guarded, and was dangerous in the absence of adequate supervision. He alleged the property was in a dangerous condition, creating a substantial risk of the type of drowning injury when it was used with due care in a reasonably

---

[2]     The children were about 33 months and 16 months old at the time of their deaths.

foreseeable manner, in that the pool was unprotected by any mechanism that would have prevented the children from falling into it. He alleged that Mann had a duty to inspect the property to determine whether dangerous conditions existed and to take adequate measures to protect individuals, including children, from the dangerous condition as funds and other means were available to him.

Mann moved for summary judgment. He argued it was unforeseeable that D'Angelo and Behrens would pass out after consuming illegal drugs and leave the toddlers unsupervised for an extended period of time without locking the various safety gates in place, and that protecting the children from that risk was therefore outside the scope of his duty as a property owner. He also argued that Bradford could not establish the element of causation. Specifically, Mann argued no one could establish the children's route from the house to the pool and how they accessed the pool, thus Bradford could not show that the presence of some additional locked gate beyond the security measures in place, which he then claimed included a five-foot-tall child security fence around the pool's perimeter, would more likely than not have prevented his children's deaths. Finally, Mann argued Bradford could not establish he had standing to sue for wrongful death, submitting Bradford's discovery response on the issue. Mann argued Bradford's response was merely a conclusory assertion that he "provided financial support" to his children, which was insufficient to meet his burden to show standing for an unwed parent to sue under the wrongful death statute.

Bradford opposed the motion. In part, he argued Mann had fabricated evidence that his pool had a perimeter fence at the time D'Angelo took possession, and regardless

5

of how the children found their way out of the house, such a fence would have prevented them from gaining entry to the pool.  He compared the case to *Johnson v. Prasad* (2014) 224 Cal.App.4th 74, in which a court reversed a summary judgment for the defendant homeowners in a wrongful death action involving the pool drowning death of a four-year-old child.  Bradford characterized *Johnson* as holding that when a defendant/homeowner knowingly rents a home with a maintained pool, the owner owed a duty of reasonable care to protect the child from drowning in that pool, and there were triable issues of fact as to whether the owners had breached that duty by failing to install a fence around the pool or a self-closing or self-latching mechanism on the only door leading from the house to the pool, as well as whether any breach was a substantial factor in bringing about the child's death.  Bradford further argued Mann had actual notice that the pool was unsecured and unfenced, he maintained responsibility for the pool, and he was liable for the dangerous condition on his premises.  He argued Mann's failure to provide a perimeter fence was not trivial or slight, but a substantial factor in bringing about the harm.  Bradford finally argued he presented evidence he provided support to Behrens for the children via his associates and friends while he was incarcerated and Behrens had taken the children to visit with him, meeting the requirements for standing.

Following arguments on the matter, the trial court granted summary judgment.  In part, it ruled Bradford could not establish that any act or omission by Mann was a substantial factor in causing the children's deaths; that Bradford could not show the presence of some additional safety feature on the property would more likely than not have prevented their deaths because there was a complete lack of evidence as to how the

6

children accessed the pool in the first place. The court ruled Bradford could not establish he had standing to bring a wrongful death claim, and he had failed to establish he contributed to the children's support.

Following the court's summary judgment ruling, Bradford moved for "reconsideration" on grounds some of the opposing evidence he had intended to file—the declaration of licensed contractor and building/safety inspector Robert Reed, the declaration of Mann's tenant Jennifer Snyder, and excerpts of Behrens's and Mann's depositions—had not been filed and was not before the court on the motion. The court continued the matter for several weeks, setting it for an August 10, 2015 hearing. On July 16, 2015, the court entered summary judgment in Mann's favor. Thereafter, Mann filed his opposition to the reconsideration motion. He pointed out that Bradford was in possession of the assertedly missing evidence at the time of the summary judgment hearing and that he (Mann) had been served with it, but the evidence did not constitute new or different facts, and the court had rejected Bradford's factual arguments based upon that evidence despite not having it during the summary judgment hearing. Mann also argued the proffered evidence was cumulative to that already before the court.

Bradford filed his notice of appeal from the judgment on August 5, 2015, before the hearing on his reconsideration motion. On August 10, 2015, the trial court conducted the hearing on Bradford's motion. Mann argued that Bradford's notice of appeal had divested the court of jurisdiction to consider it. Characterizing the reconsideration motion as one alternatively for relief under Code of Civil Procedure section 473, the

7

court denied it, ruling it had considered the additional evidence but it had no effect on its order granting summary judgment.

DISCUSSION

I. *Standard of Review*

Code of Civil Procedure section 437c, subdivision (p)(2) reads as follows: "A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto."

The party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that it is entitled to a judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Defendants moving for summary judgment bear the burden of persuasion that one or more elements of the cause of action in question "cannot be established" or that "there is a complete defense thereto." (*Ibid.*) The moving defendant can make this prima facie showing either by presenting evidence that conclusively negates an element of a plaintiff's cause of action or by presenting evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence. (*Ibid.*) If the moving defendant meets his initial burden, then the burden shifts to the plaintiff to show that a triable issue of material fact exists. (*Ibid.*)

" 'To determine whether triable issues of fact do exist, we independently review the record that was before the trial court when it ruled on defendants' motion. [Citations.] In so doing, we view the evidence in the light most favorable to plaintiffs as the losing parties, resolving evidentiary doubts and ambiguities in their favor.' " (*Elk Hills Power, LLC v. Board of Equalization*, *supra*, 57 Cal.4th at pp. 605-606.) This court "consider[s] all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334-335; see also *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1452 ["a more accurate statement of our review of a summary judgment is that we consider all the evidence set forth in the moving and opposition papers except that to which objections have been made and *properly* sustained"].)

II. *The Trial Court Lacked Jurisdiction to Hear Bradford's Reconsideration Motion*

We preliminarily address a jurisdictional issue raised by Mann. He contends the trial court acted in excess of jurisdiction in relieving Bradford of his counsel's error in failing to file the opposing summary judgment evidence referenced above. Mann maintains both the entry of judgment and Bradford's August 5, 2015 notice of appeal eliminated the court's jurisdiction to "bolster" Bradford's opposing evidentiary showing,

9

regardless of the fact the evidence had no impact on the court's summary judgment ruling.  Mann argues we should limit our consideration of opposing evidence to that of Bradford's tenant D'Angelo, the sole opposing evidence before the court at the time of the motion.  Bradford does not acknowledge or address these arguments in reply.

Mann's contention has merit.  When Bradford perfected his appeal on August 5, 2015, proceedings in the matter were automatically stayed under Code of Civil Procedure section 916, subdivision (a), and under that section the court was divested of subject matter jurisdiction over "any matter embraced in or affected by the appeal during the pendency of that appeal."  (See *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196-197.)  "[A]ny 'proceedings taken after the notice of appeal was filed are a nullity.'  [Citations.]  This is true even if the subsequent proceedings cure any purported defect in the judgment or order appealed from."  (*Id*. at p. 197.)  Here, the apparent intent of the court was to accept Bradford's omitted evidence and allow it into the summary judgment record, presumably to also assist his appeal efforts.  However, because the trial court's actions and its reconsideration order are void (*id*. at p. 198), we consider only the evidence before it at the time it ruled on the summary judgment motion.

III. *Mann Met His Initial Summary Judgment Burden to Show Bradford Lacked Evidence Demonstrating His Standing to Maintain a Wrongful Death Action*

The threshold issue of standing—a party's right to make a legal claim—is a question of law, particularly where it depends on statutory provisions conferring standing.  (*T.P. v. T.W.* (2011) 191 Cal.App.4th 1428, 1433; *Babbitt v. Superior Court of*

10

*Los Angeles County* (2016) 246 Cal.App.4th 1135, 1143; see *Neil S. v. Mary L.* (2011) 199 Cal.App.4th 240, 249.) A defendant may obtain summary judgment without addressing each of the plaintiff's causes of action by showing the plaintiff lacks standing. (*Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 736.) On appeal, Bradford does not challenge whether Mann met his initial summary judgment burden (nor did he below) and he has thereby forfeited any such contention. (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1984-1085.) We nevertheless explain below that Mann's evidentiary showing was sufficient to shift the burden to Bradford to raise a triable issue of material fact.

A. *Legal Principals of Standing*

Code of Civil Procedure section 377.60 prescribes standing to bring a wrongful death action, including such an action by a father of a child born out of wedlock for the child's death. (See *Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 188; *Lozano v. Scalier* (1996) 51 Cal.App.4th 843, 845-846.) As applicable here, the section provides that, where there are no surviving issue of the decedent, a wrongful death action may be asserted by a person "who would be entitled to the property of the decedent by intestate succession." (Code Civ. Proc., § 377.60, subd. (a).) The relevant date for determining a decedent's heirs under intestate succession is the date of the

decedent's death.  (See Prob. Code, § 7000.)[3]  A plaintiff has the burden of pleading and proving his standing to bring a wrongful death claim.  (*Soto*, at p. 188.)

For the purpose of determining intestate succession at the time of the children's May 2013 deaths, Probate Code section 6452 governed.[4]  Under that statute, "if a child is born out of wedlock, a parent may not inherit from that child on the basis of the parent-child relationship unless both of the following requirements are met:  (1) the parent acknowledged the child; and (2) the parent contributed to the support or care of the

---

[3]  Probate Code section 7000 provides:  "Subject to Section 7001, title to a decedent's property passes *on the decedent's death* to the person to whom it is devised in the decedent's last will or, in the absence of such a devise, to the decedent's heirs as prescribed in the laws governing intestate succession."  (Italics added.)

[4]  That version of the statute provided:  "If a child is born out of wedlock, neither a natural parent nor a relative of that parent inherits from or through the child on the basis of the parent and child relationship between that parent and the child unless both of the following requirements are satisfied:  [¶]  (a) The parent or a relative of the parent acknowledged the child.  [¶]  (b) The parent or a relative of the parent contributed to the support or the care of the child."  Probate Code section 6452 was amended effective January 1, 2014 (Stats. 2013, ch. 39, § 2), and now presently provides that a parent does not inherit from or through a child on the basis of the parent/child relationship if "[t]he parent left the child during the child's minority without an effort to provide for the child's support or without communication from the parent, for at least seven consecutive years that continued until the end of the child's minority, with the intent on the part of the parent to abandon the child.  The failure to provide support or to communicate for the prescribed period is presumptive evidence of an intent to abandon."  (Prob. Code, § 6452, subd. (a)(3).)

12

child."  (*Lozano v. Scalier*, *supra*, 51 Cal.App.4th at p. 846; see, e.g., *Estate of Griswold* (2001) 25 Cal.4th 904, 913 [summarizing *Lozano*'s holding].)[5]

B.  *Analysis*

As stated, Mann sought to meet his initial summary judgment burden on the issue of standing by submitting Bradford's discovery responses to a special interrogatory asking Bradford to state all facts and identify documents showing he provided support for the care of the children, and to identify the date and nature of support.  In full, the interrogatory reads:  "Please state all facts ['state all facts' means describe all facts, identify with particularity all documents reflecting said facts, and identify all witnesses with knowledge of said facts] having any tendency in reason to prove that you ['you' or 'your' mean plaintiff Jason Bradford, his agents, attorney, retained expert witnesses, any person acting on his behalf, and each of them] provided support as defined by California Probate Code [section] 6452 for the care of [the child], during his lifetime, including without limitation identifying with specificity the dates such support was provided and the nature of the support provided, whether monetary, material, or in the form of

_____

[5]     Both *Lozano v. Scalier* and *Estate of Griswold* addressed claims under the former statute involving the type or nature of an unwed parent's acknowledgment. (*Lozano v. Scalier*, *supra*, 51 Cal.App.4th at pp. 844, 846, 848, fn. 5; see also *Estate of Griswold*, *supra*, 25 Cal.4th at pp. 907, 910.)  *Griswold* also suggested that an unwed father's undisputed payment of 18 years of court-ordered child support met the financial contribution requirement.  (*Griswold*, at pp. 908, 912-913, 924 ["We do not disagree that a natural parent who does no more than openly acknowledge a child in court and pay court-ordered child support may not reflect a particularly worthy predicate for inheritance by that parent's issue, but section 6452 provides in unmistakable language that it shall be so"].)  Such dicta coming from this state's high court is highly persuasive.  (*City of San Diego v. Shapiro* (2014) 228 Cal.App.4th 756, 781, fn. 24.)

services." (Some capitalization, bold and italics omitted.) The same question was posed for both children.

Bradford answered that he "provided financial support to both [children] while they were alive. It is believed Mr. Bradford provided the majority of their needed financial support." He did not identify any documents, or further elaborate on the type of support he assertedly provided. Mann argued that such a conclusory response was insufficient for Bradford to meet his burden to demonstrate standing.

Under the above referenced summary judgment principles, when a defendant moves for summary judgment on a claim in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant may show that an element of the claim cannot be established, by "presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003.) "A defendant can satisfy its initial burden to show an absence of evidence through 'admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing' [citation], or through discovery responses that are factually devoid." (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1302; see also *People ex rel. Government Employees Insurance Company v. Cruz* (2016) 244 Cal.App.4th 1184, 1196; *Collin v. CalPortland Company* (2014) 228 Cal.App.4th 582, 587; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590.)

If a defendant seeks to rely on circumstantial evidence consisting of assertedly factually devoid discovery, the discovery responses must be such that " 'an absence of evidence can be inferred' " and " 'the burden should not shift without stringent review of

14

the direct, circumstantial and inferential evidence.' " (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 103.) When a defendant's interrogatory does not ask for information relevant to the issue at hand, or fails to seek all of the facts related to the challenged element in the plaintiff's case, a court will not infer that the plaintiff can produce no other evidence on that issue. (*Ibid.*, citing *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 81, 83; see *Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2000) 79 Cal.App.4th 114, 134.) This is because a plaintiff's duty to answer discovery completely only extends so far as the reasonable ambit of the questions that are asked. (*Gulf Ins. Co.*, at p. 134.) On the other hand, where a defendant's interrogatories are comprehensive, and a plaintiff's answers "ma[k]e clear that they [do] not have specific evidence" to support their contention such that they give boilerplate answers that restate allegations, or provide laundry lists of people or documents, the summary judgment burden of production "will almost certainly be shifted to them . . . ." (*Andrews*, at p. 107.)

Here, we must ask whether it is reasonable to infer from Mann's discovery that Bradford can produce no *evidence* that he provided financial support to his children. (*Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, *supra*, 79 Cal.App.4th at p. 134.) More specifically, we assess whether Mann's special interrogatories are sufficiently comprehensive, and Bradford's responses "so devoid of facts, as to lead to the inference that [Bradford] could not prove [standing] upon a stringent review of the direct, circumstantial, and inferential evidence contained" in the

15

responses. (*Andrews v. Foster Wheeler LLC*, *supra*, 138 Cal.App.4th at p. 107; *Scheiding v. Dinwiddie Construction Co.*, *supra*, 69 Cal.App.4th at p. 76.)

We conclude Mann's special interrogatories were sufficiently comprehensive, and that he met his initial burden on summary judgment to show Bradford's inability to establish standing by relying on Bradford's discovery responses. The interrogatories are broad and detailed, seeking the dates, nature and type of financial support provided by Bradford to his children, as well as witnesses and documents reflecting his support. The interrogatory was plainly designed to elicit all of the evidence Bradford had to support his claim of standing. Bradford's response was so incomplete and conclusory—merely stating he had provided such support without any factual description, documentation or witnesses—that it was reasonable to infer he had no evidence to support his bare assertion. We reach this conclusion under the principle that "[p]arties have a duty to respond to discovery requests 'as completely and straightforwardly as possible given the information available to them.' " (*Andrews v. Foster Wheeler LLC*, *supra*, 138 Cal.App.4th at p. 106, quoting *Union Bank v. Superior Court*, *supra*, 31 Cal.App.4th at p. 580, fn. 3.)[6] "When defendants conduct comprehensive discovery, plaintiffs cannot play 'hide the ball.' " (*Andrews*, at p. 106.) Therefore, the burden of production shifted to

---

6 In *Andrews v. Foster Wheeler LLC*, *supra*, 138 Cal.App.4th 96, the defendant had propounded "a series of special interrogatories which called for all facts regarding [the plaintiff's] exposure to asbestos from [the defendant's] products," and the plaintiffs responded with "little more than general allegations against" the defendant without stating "specific facts showing that [the plaintiff] was actually exposed to asbestos-containing material from [the defendant's] products." (*Id.* at p. 104.) The court held that by failing to provide any information in response to these discovery requests, the

16

Bradford to establish with admissible evidence the existence of a triable issue of fact as to his standing.

C. *Bradford Did Not Raise a Triable Issue of Material Fact as to Standing*

Having concluded that we are limited to considering only the evidence before the trial court at the time it made its initial summary judgment ruling, we in turn conclude Bradford did not meet his opposing summary judgment burden to demonstrate triable issues of material fact for a jury as to his standing to sue for wrongful death. The sole evidence on which Bradford relied in his opposing papers was Behrens's deposition testimony, which was not before the court. In short, the only admissible evidence submitted in opposition to his motion was the declaration of Bradford's tenant, D'Angelo, and that declaration did not address the issue of Bradford's financial support to his children. Bradford's failure to present admissible evidence raising a jury question as to whether he contributed financial support to his children justifies summary judgment in Mann's favor on the standing issue alone.

---

plaintiffs admitted that they had no further information. (*Id*. at pp. 106-107.) "If plaintiffs respond to comprehensive interrogatories seeking all known facts with boilerplate answers that restate their allegations, or simply provide laundry lists of people and/or documents, the burden of production will almost certainly be shifted to them once defendants move for summary judgment and properly present plaintiffs' factually devoid discovery responses. [¶] In short, [the defendant's] discovery was sufficiently comprehensive, and plaintiffs' responses so devoid of facts, as to lead to the inference that plaintiffs could not prove causation upon a stringent review of the direct, circumstantial and inferential evidence contained in their interrogatory answers and deposition testimony." (*Id.* at p. 107, fn. omitted.)

17

IV. *Bradford's Evidence Did Not Demonstrate Triable Issues of Material Fact as to Breach of Duty and Causation for Purposes of Premises Liability in Any Event*

" 'A cause of action for wrongful death is . . . a statutory claim. (Code Civ. Proc., §§ 377.60–377.62.) Its purpose is to compensate specified persons—heirs—for the loss of companionship and for other losses suffered as a result of a decedent's death.' [Citation.] ' "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the *pecuniary loss* suffered by the *heirs.*" ' " (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968.) Here, the tort theory underlying Bradford's claim was one for negligence based on premises liability. The elements of such a cause of action are (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that legal duty, and (3) the breach was the proximate or legal cause of the plaintiff's injuries. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205; *Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998; *Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 426.)

" '[E]very [negligence] case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct.' [Citation.] The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide. [Citation.] However, the elements of breach of that duty and causation are ordinarily questions of fact for the jury's determination." (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 278 (*Vasquez*).) In general, "[a] landowner ' " 'has an *affirmative duty* to exercise ordinary care to keep the premises in a reasonably safe condition, and

18

therefore must inspect them or take other proper means to ascertain their condition.' " ' " (*Salinas v. Martin* (2008) 166 Cal.App.4th 404, 412; *Vasquez*, at p. 278.)  But in a summary judgment context, the court must decide the *scope* of the landowner's duty: what "specific action [Bradford] claims [Mann] had a duty to undertake in the particular case."  (*Vasquez*, at p. 280; see also *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214.) Only then can we meaningfully balance the risks and burden to determine whether the specific obligation should or should not be imposed on the landowner.  (*Vasquez*, at p. 280.; see also *Lawrence v. La Jolla Beach and Tennis Club, Inc.* (2014) 231 Cal.App.4th 11, 23 ["A court deciding the issue of the scope of a landlord's duty 'should limit its inquiry to the specific action the plaintiff claims the particular landlord had a duty to undertake in the particular case.' "].)

On appeal, Bradford contends Mann owed a nondelegable duty of care "vis-à-vis his children as a matter of law" (bold and capitalization omitted), without specifying what steps Mann should have taken.  Bradford later maintains he raised a triable issue of fact as to whether "Mann owed a duty of care to maintain his premises in a reasonably safe condition, including installing a perimeter fence around the pool, and whether he breached that duty of care by failing to recognize the necessity of installing such a perimeter fence around the pool . . . ."  Bradford quotes *Johnson v. Prasad*, *supra*, 224 Cal.App.4th 74 for the proposition that "[w]here the homeowners knew they were renting out a house with a maintained pool, it was foreseeable that children would be on the property.  It was also foreseeable that children would approach the pool, regardless of their capacity to swim, thus exposing themselves to the danger of drowning.  Thus, the

19

foreseeability of harm to a young child . . . weighed in favor of imposing a duty of care on the homeowners." (*Id*. at p. 80.)

It is reasonably clear from his arguments in opposition to summary judgment that Bradford maintains that apart from all other security measures in place, Mann had a legal duty of due care to install a perimeter fence around the pool, and that his failure to do so constituted a breach of that duty owed to his children. We cannot agree.

In determining existence and scope of a duty, we consider several factors: " ' "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." ' [Citations.] Foreseeability and the extent of the burden to the defendant are ordinarily the crucial considerations, but in a given case one or more of the other . . . factors may be determinative of the duty analysis." (*Castaneda v. Olsher*, *supra*, 41 Cal.4th at p. 1213.)

Here, Mann presented evidence that at the time D'Angelo moved into the property, Mann had in place several different security measures—locking gates preventing someone entering the backyard from the outside front of the house, and two locking security gates completely covering the sliding glass doors leading from the home's interior to the fenced back patio balcony—that would prevent unsupervised infants or toddlers from accessing the backyard swimming pool. While it is true that a

20

landowner/lessor has an affirmative duty to maintain his or her premises in a reasonably safe condition (a duty that can be described as nondelegable, see *Brown v. George Pepperdine Foundation* (1943) 23 Cal.2d 256, 260; *Felmlee v. Falcon Cable TV* (1995) 36 Cal.App.4th 1032, 1036, 1038-1039 ["A nondelegable duty is a definite affirmative duty the law imposes on one by reason of his or her relationship with others" and can arise when a statute provides specific safeguards or precautions to insure the safety of others]), as a matter of law under the undisputed circumstances presented here, we conclude the scope of Mann's duty of care to maintain his property in a reasonably safe condition did not include installing a perimeter fence around the pool, in addition to the other security measures that were in place.[7] It is undisputed Mann rented his home with a maintained backyard pool to an adult male as the sole tenant and provided locking gates from the front yard into the backyard, locking security gates covering the two exit doors from the interior of the house to the fenced back patio balcony on which a young child would have to traverse to get to the pool, and a locking gate on the patio balcony fence. There is no evidence Mann should have foreseen the particular harm or risk at issue.

_____

[7]    Bradford does not argue that the Swimming Pool Safety Act (Health & Saf. Code, § 115920 et seq.) gives rise to any such nondelegable duty on Mann to take this specific precaution, and we conclude it does not.  That act mandates, subject to exceptions (Health & Saf. Code, § 115922, 115925), that an owner put in place one of several enumerated safety features when a building permit is issued for "construction of a new swimming pool or spa" or "for remodeling of an existing pool or spa" at a single family home, neither of which occurred here according to Mann's undisputed evidence.  (Health & Saf. Code, § 115922, subd. (a).)  The features include such things as an approved safety pool cover, exit alarms, self-closing or self-latching doors on doors providing direct access to the pool, or a "removable mesh pool fencing" meeting specified standards "in conjunction with a gate that is self-closing and self-latching and can accommodate a key lockable device."  (*Id*., subd. (a)(2), (3), (4), (5).)

Specifically, there is no evidence Mann had knowledge or should have known of illegal drug use at the home, that D'Angelo or Behrens used methamphetamine or other illegal drugs and that toddler children would be present while they did so, or that D'Angelo or Behrens would leave any one of the security gates unlocked with toddlers unsupervised and free to roam about the house while they were sleeping as a result of consuming methamphetamine. There is no dispute that Behrens engaged in criminal abuse with respect to the care and supervision of her children at the time of their deaths. We cannot say Mann should have foreseen these dangers, placing on him an additional specific duty of due care to install yet another security measure, namely, a fence surrounding the pool's perimeter.

Further, though Bradford certainly suffered injury and Mann has available homeowners insurance, the closeness of the connection between Mann's conduct in failing to install a perimeter fence in addition to the other security measures and the injury is tenuous, in view of Behrens's extreme neglect. As for moral blame, "the moral blame that attends ordinary negligence is generally not sufficient to tip the balance of the *Rowland* [*v. Christian* (1968) 69 Cal. 2d 108] factors in favor of liability." (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 270.) Courts have found that this factor favors the imposition of a duty "where the defendant (1) intended or planned the harmful result . . . ; (2) had actual or constructive knowledge of the harmful consequences of their behavior . . . ; (3) acted in bad faith or with a reckless indifference to the results of their conduct . . . ; or (4) engaged in inherently harmful acts . . . ." (*Ibid.*) No such evidence is presented here.

22

Our conclusion is not altered by either of the cases cited by the parties involving the unfortunate drowning deaths of children accessing backyard pools. *Padilla v. Rodas* (2008) 160 Cal.App.4th 742 did not address the specific duty question for purposes of premises liability, as that case focused only on the element of causation. (*Id*. at pp. 752-753.) In *Padilla*, the evidence showed the child could have gained access to the pool through several different gates or doors from a side yard or the home's interior, and because the "probabilities [were] evenly balanced" as to whether the child gained entrance through any of those means, plaintiff could not prove the failure of the defendants to install a self-latching gate was a substantial factor in causing the child's drowning death. (*Ibid*.) Importantly, the plaintiff in *Padilla* did not proffer, and therefore abandoned, the premises liability theory advanced here: that there was liability based on the "lack of a *separate fence and gate* around the pool." (*Id*. at p. 753, fn. 2.) Otherwise, the court in *Padilla* addressed whether the homeowners had assumed a duty to *supervise* the child, holding they did not as it was not reasonably foreseeable the plaintiff mother would leave the two-year-old child outside unattended or under the supervision of other young children while she went inside the house. (*Id*. at pp. 747-748, 751-752.) Bradford neither alleged nor claims Mann owed a duty to supervise his children, and such a duty is not at issue in this case. *Padilla* does not assist Bradford or compel reversal.

In *Johnson v. Prasad*, the court reversed a summary judgment in homeowners' favor, broadly holding as a matter of law they "owed [a four-year-old child] a duty of reasonable care to protect him from drowning in a swimming pool at a house they rented to tenants." (*Johnson v. Prasad*, *supra*, 224 Cal.App.4th at p. 79.) In that case, the only

23

direct access from the house to the backyard pool was through the kitchen sliding glass door covered by a security gate without a self-closing mechanism. (*Id*. at p. 77.) The child's grandmother had failed to close the gate or sliding door while family members, including the child, were entering the house after swimming, and she did not see that the child had later left the house into the backyard, where he was found at the bottom of the pool. (*Ibid*.) *Johnson* observed that the homeowners knew a maintained pool was included with the rental, it was reasonable to expect children would use the pool, and that young children especially would approach pools regardless of their capacity to swim, thus exposing them to drowning. (*Id*. at p. 80.) *Johnson* held that harm to a young child was foreseeable and that the extent of the burden on the homeowners was time and money to add a safety feature that might prevent the drowning, including a pool perimeter fence or a self-closing or self-latching mechanism from the only available route from the house to the pool. (*Id*. at pp. 80, 82.) These factors, as well as the closeness of connection, moral blame, and availability of homeowners insurance, weighed in favor of imposing a duty of care on the homeowners. (*Id*. at p. 82.)

We decline to extend *Johnson v. Prasad* to the facts presented and Bradford's claim here that Mann owed a particular duty to install a perimeter fence around his backyard pool. Under *Johnson*'s reasoning applied to Bradford's claim, any landlord having a backyard pool would foresee the potential for children invitees to approach it, and owe a duty to install a perimeter pool fence regardless of the fact no ordinance or other law mandates such a fence, regardless of other security measures taken by the landlord including gates with locks and latches, and regardless of the fact a parent was

24

present but woefully, indeed criminally, neglectful in supervising her toddlers. Doing so would impose a higher duty on a landowner in Mann's position than that required by the Legislature, which in enacting the Swimming Pool Safety Act (see footnote 7 *ante*) has considered the dangers posed by pools to small children and limited its provisions to owners of new or remodeled pools, giving them the option of putting various other safety measures in place than a perimeter fence. (Compare, *Johnson v. Prasad*, *supra*, 224 Cal.App.4th at p. 81 [though homeowners were exempt from the Swimming Pool Safety Act, court used the statute to inform the extent of the burden to homeowners and consequence to the community, and stated the burden was on homeowners "was time and money to add a safety feature that might prevent the drowning of a child"].) Imposing a duty in this case would ignore the principle that a landowner "is not required to forestall the foreseeable consequences of others' negligence . . . ." (See *Pineda v. Ennabe* (1998) 61 Cal.App.4th 1403, 1408;[8] *Akins v. County of Sonoma* (1967) 67 Cal.2d 185, 198 ["[A] person does not act negligently if he cannot be expected to reasonably foresee the existence of an unreasonable risk of harm to another through the intervention of

---

[8]     In *Pineda v. Ennabe*, *supra*, 61 Cal.App.4th 1403, the parents had taken affirmative action to enhance the danger by essentially "put[ting] what amounted to a trampoline in front of a second story apartment window and allow[ing] the child to bounce on it unsupervised." (See *Amos v. Alpha Property Management* (1999) 73 Cal.App.4th 895, 906; *Pineda*, at p. 1408.) In part, the court held there was little likelihood the landlord's failure to place warning labels or latches on the window screens would cause an accident of the kind that occurred unless the parent was negligent, and "[l]ittle moral blame, if any, attached to the landlord's failure to place warning labels, latches, or bars on the window, since reasonable landlords could properly assume that parents would take precautions to supervise their children and prevent them from falling out windows." (*Pineda*, at p. 1408.)

negligence of a third person"].)  "Landlords are not insurers of their tenants' safety [citation] and are not required to make their premises absolutely 'child proof' by providing every possible safeguard against injury to children on their premises."  (*Amos v. Alpha Property Management*, *supra*, 73 Cal.App.4th at p. 898, fn. 1.)

In sum, notwithstanding our conclusion concerning standing, summary judgment was additionally warranted in Mann's favor on the issue of the existence of a duty of care.

DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McDONALD, Acting P. J.

AARON, J.

26